

| Titan International, Inc. & Subsidiaries | PROCEDURE | REVISION 05/24/01 | PAGE 1 OF 2 |
|---|---|---|---|
| | DATE ISSUED 02/14/96 | | |
| TITLE  Solicitation, Distribution and Bulletin Board Policy | APPROVED BY | | |

Titan International recognizes that employees have interests outside of the workplace that they may wish to share with their co-workers. However, in order to ensure the efficient operation of the business as well as providing a harmonious work environment in which all employees are free from annoyance or intimidation, it is necessary to control solicitation and distribution of literature on Titan property. Therefore, Titan has adopted this policy.

## Policy

It is the policy of Titan at all times to prohibit solicitation and distribution on its premises by non-employees (except by representatives of suppliers properly identified to Security Officers) and to permit solicitation and distribution by employees only as outlined below:

1. Employees may not solicit or advocate support for any cause or organization during their working time or during the working time of the employee to whom such activity is directed. Titan limits solicitation and distribution on its premises because if left unrestricted, such activities can interfere with the normal operations of the company and can be detrimental to the employees safety and efficiency as well as be annoying to customers. Such activity may even pose threat to security.

2. Employees may not distribute or circulate any non-company materials during their working time or during the working time of the employee to whom such activity is directed. Also, employees may not distribute such materials in work areas at any time. Company materials are limited to items distributed by Titan for the operation of its business or providing information to its employees.

3. Employees are permitted to engage in solicitation or distribution of literature for any group or organization, including charitable organizations, only in accordance with the following restrictions:



**PLAINTIFF'S EXHIBIT**
1



A.    The sale of merchandise is prohibited on company premises.

B.    Solicitation and distribution of literature are prohibited during the working time of either the employee making the solicitation or distribution, or the targeted employee. The term "working time" does not include an employee's authorized lunch or rest periods or other time when the employee is not required to be working

C.    Distribution of literature is prohibited in work areas at all times.

D.    The distribution of literature in such a manner as to cause litter on company's property is prohibited.

E.    Off-duty employees are not allowed to return to the company premises until their next scheduled work time except as a customer of the company or as requested by management.

4.    <u>Non-Employees</u>

Persons who are not employees of Titan are prohibited from soliciting funds or signatures, conducting membership drives, distributing literature or gifts, offering to sell merchandise or services or engaging in any other solicitation or similar activity on Company premises.

5.    <u>Working time and Non-Work Areas.</u>

Working time does not include time during meals or breaks, before or after work, or any other periods when employees are not on duty. Non-work areas include the parking lot and break room. Employees who are not certain whether an area is a work or non-work area should consult his/her Personnel Manager for clarification.

6    <u>Bulletin Boards.</u>

The posting of written materials on company bulletin boards must be approved in advance by the Human Resource Department.

**The Human Resource Manager is responsible for administering this policy and for enforcing its provisions. Employees will be subject to disciplinary action for violations of this policy.**



# United
# Steelworkers of
# America

AFL·CIO/CLC

RUBBER/PLASTICS INDUSTRY CONFERENCE
Local Union No. 745
2496 E. Maize Road
Freeport, IL 61032
815/235-9713
FAX 815/232-7762

STEVE VANDERHEYDEN, President
DAN KREEGER, Vice President
DAVE SWANSON, Recording Secretary
LARRY TIMMS, Financial Secretary
JOHN FULLER, Treasurer

February 28, 2006

Hill Mayfield, Manager
Human Resources
Titan Tire Corporation of Freeport
3769 Route 20 East
Freeport, IL  61032-9653

Dear Hill,

As provided for in Article XI, Section 7, please note the attached listing of oral agreements and past practices which existed at the time of the sale of the plant and that the Union wishes to continue in the future. Please feel free to review this listing and contact me with any questions or suggestions you may have on this subject.

Fraternally,

Steve Vanderheyden
President

SV/mm/C:\MSOffice\Vanhyden\oral.doc
Enc.
cc:    Gene LeSuer
       Dan Kreeger



PLAINTIFF'S
EXHIBIT
2

# Listing of Oral Agreements - Freeport Plant

## February 28, 2006

1.   Definition of "emergency" for all contract purposes is condition such as fire, flood, explosions, catastrophic equipment failure, etc.

2.   Changes in performance expectations/day work goals can not be made without a change in the associated production process.

3.   Employees performing jury duty activities or reporting for jury selection as a result of a summons are not required to return to work for any portion of their shift should they not serve on this duty for the entire day.

4.   Payment for lost time due to military duty leave will be made based on employee supplying orders/documents supplied by military – no other form required.

5.   Regarding funeral leave, in the event the funeral is scheduled on a non-scheduled workday, the involved employee is not required to take that day(s) as part of his/her funeral leave. In the event the funeral is not scheduled near the death of the family member, the employee has the option to take the leave immediately rather than wait for the date of the funeral to be included in the leave period.

6.   In the event when a national holiday recognized by local banking facilities occurs on a normal payday, paychecks are distributed to employees one day prior to the holiday.

7.   The placement procedures contained in Article VIII, Section 10 (b) (reference: by seniority) apply to placements for any reason and not only placements due to surplus.

8.   Employees have general discretion regarding their work attire. As part of this, employees are not prohibited from wearing shorts in the plant.

9.   Company will continue current guidelines for summer help program.

10.  During the 30 minutes immediately preceding and following the beginning or ending of any shift, no commercial or delivery vehicles are allowed to enter or exit the plant.

## Listing of Oral Agreements - Freeport Plant

11. Local 745 Office Manager to have access (as if she is a Titan employee) on company systems such as computer communications, plant access for meetings, etc.

12. Payroll deductions will be available for all items currently permissible including COPE/PAC contributions, optional life insurance premiums, uniforms rental/cleaning, United Way contributions, court ordered child support payments, maintenance and garnishments payments, US savings bond purchases, and 401(k) contributions and loan payments.

13. Employees are not subject to advancement in disciplinary steps for infractions of different work rules, and previous disciplinary action for a violation of one work rule is not relevant to the consideration of disciplinary action for violation of a different work rule.

14. Travel expense reimbursement rules for hourly employees (including Union representatives) when traveling on company work will.

15. The Company will provide suitable facilities for employees to have lockers, showers and bathrooms for employees. Additionally, all locker rooms, showers and bathrooms currently in use and maintained today remain open for use and sanitarily maintained at the company expense.

16. The Company will provide the Union with a weekly report of Union dues withheld from employee's paychecks and send this report to the Union office.

17. The Company will provide the Union with a weekly report of COPE/PAC contributions withheld from employee's paychecks and send this report to the Union Office.

18. New hires/classification trainees will not be scheduled for work on Saturday unless they will be assigned to an available trainer. After satisfying the necessary training for each department, the scheduling of trainees on Saturday will replace a senior in-classification employee on that shift.

## Listing of Oral Agreements - Freeport Plant

19.  Department 320 Pellet Truckers and Service Truckers will be provided relief for personal breaks and lunch period upon request.

20.  Incorporate "Guidelines for Department 320 Labor Moves" (dated 3-22-05)\

21.  Straining of stock in Department 430 is considered "non-productive" work, and will only be scheduled on Saturday with voluntary labor.

22.  The Company will provide the Union with reasonable private office space in the plant, including computer equipment and a telephone with outside access for Union business in this office.

23.  The Company will provide the Local Union with the necessary computer communication capabilities between the Union Office and the plant and maintain that equipment at its expense.

24.  The copy machine at the Union office will be included in the Company's lease arrangement and associated supplies cost.

25.  The company will provide the Union with a weekly report of labor movements in a form called the "Daily Labor Report", including all information previously supplied by the company and send this report to the Union Office.

26.  The Company will provide the Union with a weekly "Sick Leave Report" containing the employee's name, shift, department and clock card number and last day worked for all employees on sick leave. In addition, the report will indicate wither or not the employee has been placed on inactive status (employment roll).

27.  The Company will provide the Union with notice of changes in employee address and phone number submitted to the company by hourly employees and send the changes to the Union Office.

## Listing of Oral Agreements - Freeport Plant

28.   The Company will permit employees to use the recreation area on the East End of the plant property. Employees will be permitted to use the baseball diamond, the trap house and trap range along with the "Sport Clubhouse" enclosed facility. The Company will continue to maintain the facilities at its expense.

29.   The Company will make the necessary arrangements so those employees may elect to purchase US savings bonds by payroll deduction.

30.   Employees will not required to display or wear any Company badges while on duty, or use any devices to determine their identify other than standard employee ID badges and badge readers.

31.   In the event an employee loses an employee badge, or it is damaged or lost in the course of normal work, it will be replaced at the expense of the Company.

32.   The Company will continue to send plant Fire Brigade Emergency Medical Technician personnel to a qualifying annual training session at company expense.

33.   All employees, both hourly and salaried, are to be canvassed by plant personnel for contributions via payroll deductions to the area United Way organization with those monies forwarded to the United Way offices on a monthly basis.

34.   A parking space inside the plant near the employee entrance will be reserved for use by selected United Way contributors. The selection process will be mutually agreeable.

35.   The UB time charge for the Union Vice President will be 4 hours per day to the 800022 account and 4 hours per day to the 800023 account for each regularly scheduled workday, Monday through Friday.

36.   Regarding charging of time to the Union business account 800023, the Union is only charged such time as is required for the Union representative to perform necessary Union

## Listing of Oral Agreements - Freeport Plant

representation duties, and not for all time spent away from his job. Travel time and time spent to locate appropriate member of management is to be at the expense of the company.

37.  The Company will provide outside break areas at designated locations. At each of these locations, adequate picnic tables will be provided and maintained at the company expense.

38.  The Company is solely responsible to notify all persons involved of the date, time and location of all grievance meetings, make necessary schedule and contact adjustments, and notify all appropriate persons of any changes within the time frames specified in the Agreement.

39.  The Company will provide a copy of all derogatory write-ups (of any types) to the disciplined employee.

40.  Employees will be allowed to enter the plant at any reasonable time prior to the start of their shift, and/or exit at any reasonable time following their shift.

41.  Suitable weight-belts will be supplied to employees upon request.

42.  Metric tools will be supplied by the Company for any employee assigned to use them.

43.  The Company is to supply necessary machine tooling and cutters to machinist classification members, and drills, taps and thread chasers to all employees assigned to use them.

44.  The Company is to supply all heavy lifting equipment.

45.  The Company is to supply trouble shooting meters to electricians, instrument repairmen and HVAC and other craftsmen as appropriate.

46.  The Company is to supply all required large tools and specialty tools which are not standard hand tools.

47.  The company will supply standard consumable items normally used on the job, including but not limited to flashlights and batteries, tape measures, variety of necessary knives, shears,

## Listing of Oral Agreements - Freeport Plant

rags, allen wrenches (metric and SAE), plastic hammers, pens and pencils including steel marking, chalk, baseball bats, abrasive wheels, grinding and cutoff disks, and crayons.

48. The Company is to supply Personal Protective Equipment options for employee preference; different types and styles of hearing protection, eye protection. Also the company will provide disposable coveralls, plastic gloves and leather gloves appropriate for the tasks assigned, upon request.

49. The Company is to supply adequate cold weather gear and rain gear to employees when required by inclement outside weather or unusual conditions within the plant.

50. Minor Injury Report forms, Near Miss Report forms, and Property Damage Report forms will be completed where appropriate and copies promptly provided to the Union.

51. The Company to provide for monthly on-shift departmental safety meetings in designated locations with all employees.

52. Accident investigation will be conducted jointly by supervisors and hourly safety designees, with copies of all reports provided to the Union.

53. Hourly safety designees will conduct monthly on-shift safety audits with necessary time charged to the appropriate Company paid account.

54. Truck mechanics will maintain the parts inventory for equipment repairs. The Company will provide the necessary computer equipment and an outside phone line for this purpose.

55. The Company will replace at its expense broken tools for craftsmen, damaged toolboxes and provide tool repair kits where appropriate.

56. The Company will provide hand cleaners, soap (in bathrooms and showers) and hand creams.

57. The Company will provide a full time, certified nurse during 1st shift hours.

58. The Company to supply oxy-acetylene torches, tips, tip cleaners and ignition strikers to craftsman assigned to this type of activity.

## Listing of Oral Agreements - Freeport Plant

59. The Company to supply torch and welding supplies (solder and solder irons) and necessary protection equipment including polarized face shields, weld helmets, replacement weld helmet lenses, leather clothing, and hot work gloves.

60. The Company will supply non-abrasive eyeglass cleaning supplies.

61. The Company will supply hand towels, including towels pre-moistened with cleaning agents.

62. The Company will supply solvent-based parts cleaners and necessary protective clothing.

63. The Company will supply appropriate safety lockout hasps, other lockout apparatus, and locks for isolation of all types of hazardous energy.

64. The Company will provide the equipment and resources for monthly training sessions for Fire Brigade members.

65. The Company will conduct annual CPR training and re-certification for Fire Brigade members.

66. The Company will provide for an annual medical physical examination for Fire Brigade members.

67. The Company will provide a Spill Response Team as part the Fire Brigade, and will provide the necessary resources for regular, scheduled training sessions (not less than quarterly) for Spill Response Team members.

68. The Company will provide "First Responder" re-certification for Fire Brigade every 3 years.

69. Fire Brigade members will be considered to be previously released from other regular duties as a result of notice of any plant emergency.

70. The Company will replace at its expense, damaged clothing for Fire Brigade members including footwear, if damaged while performing Fire Brigade duties.

71. The Company to supply emergency response equipment and supplies, including plant ambulance with gurney, defibrillator and all appropriate medical supplies.

# Listing of Oral Agreements - Freeport Plant

72.   The Company to supply turnout gear, SCBA, fire fighting equipment and supplies, and spill containment equipment and supplies.

73.   The Company will supply a variety of dust masks and personal respirators appropriate for job tasks and area assigned upon request.

74.   The Company will provide adequate personal lockers and locks.

75.   Maintain the unique "buddy system" maintenance for Saturday scheduling in the maintenance department.

76.   Complete workstation re-alignment in maintenance department classifications occur by seniority when management makes significant work assignment changes to the workstation job description of one or more workstations in the classification. In the event of a vacancy or workstation realignment in the maintenance department, all workstations are subject to assignment by seniority on shift, without restriction to the number of moves involved.

77.   Orientation of new hires in the maintenance department includes assignment of work with other craftsmen in all areas of the plant for equipment familiarization.

78.   Employees that report off for work by leaving a message on voice mail at the designated phone number for this purpose before the start of their assigned shift are considered to have satisfied their contractual obligation for reporting off.

79.   Powerhouse classification employee(s) that will not receive a day off on a scheduled holiday due to the unique shift schedule in this classification will be afforded his choice of holiday pay rate or a scheduled day off on one of the days adjacent to the holiday.

80.   The Company will maintain a designated section for carpool parking year round. During spring, summer and fall, the Company will maintain a designated parking section for motorcycle parking.

81.   The Company will provide food, snack and hot and cold beverage vending services.

## Listing of Oral Agreements - Freeport Plant

82.  The Company will provide truck shop mechanics to assist employees with automobile troubles while in the parking lot, if requested.

83.  The Company to provide equipment, protective devises and clothing for work performed on high voltage equipment.

84.  The Company to provide machinist classification with necessary large measuring tools.

85.  The Company to provide anyone assigned to perform painting work necessary protective equipment, including respiration equipment.

86.  Union representatives will continue to attend the "production meetings" as a company called meeting.

87.  Employee bank account and routing numbers are not to be displayed on paychecks and/or SUB account checks.

88.  No social security numbers will be displayed on the employee benefit cards.

89.  Employees that supply medical evidence to support absence from work for medical reasons will not be required to complete a separate leave application.

90.  The Company will conduct annual classification training and re-certification testing.

91.  The Company will conduct annual fork-truck driving training and re-certification testing.

92.  The Company will provide for in-plant prescription safety eyeglass service, in addition to replacement, fitting and repair service.

93.  Employees who volunteer for Saturday overtime who do not do so within the contractual deadlines (referred to as "Redline" signers) will be scheduled in place of any in-classification forced non-volunteers by seniority that accepts being removed from the schedule.

94.  Individual workstations that have been fitted with personal fans and heaters located at will be maintained or replaced at Company expense.

## Listing of Oral Agreements - Freeport Plant

95.   The Company will maintain all existing information bulletin boards, both informational boards and/or overtime award posting boards.

96.   The Company will maintain plant mailboxes for Union mail and for various hourly committee members.

97.   The Company will maintain existing bulletin board for posting of inspirational messages (outside Union Safety office).

98.   The Company will permit the open distribution of "Daily Bread" inspirational booklets.

99.   The Company and Union will maintain the joint process for handling personality conflicts between all employees using mutually agreeable procedures.

100.  The Company shall pay the lost time for the Safety Committee to attend any conference or training associated with Article XII Section 1 (i) and (o).

101.  The Company shall continue to conduct quarterly meetings regarding the Lead Hand program with Lead Hands and backup Lead Hands, Lead Hand Shift Coordinators, Oversight and Driver Committee members, and EI Coordinators at company expense.

102.  Payroll errors will be corrected as soon as possible, and if necessary, by providing a payroll advance to involved employees, which will be reconciled in subsequent payroll periods.

103.  Company will be responsible to reimburse employees for any bank fees and other charges that are the result of late EFT under direct deposit.

104.  The Company will maintain the existing payphones in the plant.

105.  Incorporate vacation scheduling methods for weekly and daily vacation in Maintenance Department.

106.  Employees will be allowed to participate in departmental "pot luck" type celebrations during scheduled breaks during certain holiday periods and birthdays.

## Listing of Oral Agreements - Freeport Plant

107. Upon request, employees may accept food delivery at the plant during their scheduled breaks and personal time.

108. Employees that have qualifying FMLA conditions which are chronic and ongoing in nature will not be subject to a mandatory 30 day re-certification requirement.

109. Incorporate "Holiday Periods During Suspension Time" understanding (dated 5/21/1968)



March 28, 2006

Steve Vanderheyden, President
USW Local No. 745
2496 E. Maize Road
Freeport, IL 61032

Subject:     Oral Modifications – Management Response

Dear Steve,

As we reviewed and discussed in detail in today's meeting, enclc
find management's response to the Union's claimed listing of or
in accordance with Article XI, Section 7, of the CBA.

Sincerely,

Hill Mayfield
Manager, Hur
Titan - Freepo

Enclosure

CC:  Gene LaSuer
     Dan Kreeger

TITAN TIRE CORPORATION OF FREEPORT
3769 Route 20 East
Freeport, IL  61032-9652
(815) 235-4185 * Fax: (815) 235-6209


EXHIBIT
3

# Titan - Freeport Oral Agreements - Management Response

Date:    3/28/06

| # | Union Oral Agreement Issue | Mgt. Response | Mgt. Comments & Position |
|---|---|---|---|
| 1 | Definition of "emergency" | No | See Art V, 1(a)   Exceptions may be made in case of emergency, such as machinery breakdown, fire, or when necessary to fill orders within a specified time or to adjust production schedules. |
| 2 | Changes in performance expectations | No | Changes have been made as necessary & reviewed with Union |
| 3 | Jury duty not required to RTW | No | This has occurred in past but Mgt disagrees with not RTW in some cases |
| 4 | Military duty leave payments | No | A form supplied by HR is required per the contract |
| 5 | Funeral leave practices | No | No oral agreement - 1st sent. OK - 2nd sent. By exception not by rule. |
| 6 | Paycheck distribution on holiday | Yes | When Nat'l Holiday falls on Fridays only. |
| 7 | Placement procedure Art VIII, Sec 10(b) | No | Placed by seniority only if processed within the same week |
| 8 | Work attire - can wear shorts | No | Co. has always reserved right to revise/adjust attire for safety purposes. |
| 9 | Summer Help program guidelines | Yes | If there is a program in the future |
| 10 | Commerical/delivery vehicles - 30 min. | No | Used as a general practice but co. reserves right to revise/adjust. |
| 11 | Local 745 Office Mgr access to co.systems | No | No agreement - has e-mail access on AOL now. |
| 12 | Payroll deduction avail.-all current items | No | Done in past but Titan does not have Savings Bond capability |
| 13 | Cannot advance disc.steps for diff.work rule | No | Co. to follow current disciplinary guidelines in place |
| 14 | Travel expense reimburse for hrly emps. | No | Only when authorized & approved by Mgt prior to the travel |
| 15 | Co. provided suitable facilities | No | no - 2nd sent.   ]yes - 1st sentence Only |
| 16 | Weekly report of Union dues to Union office | No | Provide on monthly rather than weekly basis only. |
| 17 | Weekly report of COPE/PAC to Union office | No | Provide on monthly rather than weekly basis only. |
| 18 | Class.trainees/new hires not sch. On Sat. | No | Must be a Mgt discretion due to safety, training & production concerns |
| 19 | Dept 320 Pellet & Service Trkers PT relief | No | Has been allowed only when Mgt approves - no oral agreement |
| 20 | Incorp.Guidelines for Dept 320 Labor Moves | No | No oral agreement to incorporate guidelines for Dept 320 labor moves |
| 21 | Stock straining Dept 430 "non-prod."work | No | Function of the dept that must be done when necessary |
| 22 | Co.provided Union office space with equip. | Yes | Co. provided Union office at plant currently in effect |
| 23 | Co./provided/maintain Union computer cap. | No | No agreement to have communications capability between Union off & plt. |
| 24 | Co. provided copy mach/supplies for Union | No | No agreement to provide machine, paper, toners, etc. |
| 25 | Co. provided weekly report of labor moves | No | Will provide as long as report is being generated. |
| 26 | Co. provided weekly "Sick Leave Report" | No | Will provide as long as report is being generated. |
| 27 | Co. provided changes in addresses/phone | Yes | Currently have a 3 part "Change of Address" form - union gets a copy |
| 28 | Permit emp.use of recreation area east end | No | Trap house & range closed due to environmental.  BB field not used in yrs. |
| 29 | Co.provided US Savings Bonds payroll ded. | No | Yes under Goodyear but Titan has no current capability |
| 30 | Not required to display/wear Co.badges | No | No oral agreement in place - no required badges in past |
| 31 | Emp.badges replaced at Co. expense | No | No badges required in past - No charge for replacing swipe cards |
| 32 | Annual train Fire Brigade EMT's at Co.Exp. | Yes | Has been done in past but must require effective training for others after |

| # | Union Oral Agreement Issue | Mgt. Response | Mgt. Comments and Position |
|---|---|---|---|
| 33 | Canvass all emps.for UW payroll deduction | No | Has been done in past but is always a mgt decision to participate or not |
| 34 | Inside parking space for select UW Contrib. | No | Has been done in past but is always a mgt decision to participate or not |
| 35 | Daily UB Union VP = 4hrs 8022;4hrs 8023 | No | No oral agreement |
| 36 | UB not charged for travel & location time | No | No oral agreement |
| 37 | Co. provided outside break areas | Yes | Three (3) agreed to areas at south end of plant only as per CBA |
| 38 | Co.solely resp.to notify all of grievance mtgs. | No | No oral agreement - Union can schedule & arrange for meetings too. |
| 39 | Co. to provide copy of derogatory write-ups | No | No oral agreement to "any types" such as notations. |
| 40 | Emps.plant entrance/exit at reasonable time | No | No oral agreement as to "reasonable times". |
| 41 | Co. provided suitable weight belts to emps. | No | Based upon Dr's request & recommendation not employee request |
| 42 | Co. provided metric tools as needed | No | Some specific size and type metric tools have been provided but not all |
| 43 | Co. provided equip. to Machinist class. | No | Special type tools have been provided on an as needed basis only |
| 44 | Co. to provide all heavy lifting equipment | No | No oral agreement |
| 45 | Co.to provide trouble shooting meters | No | Due to RMS & Pulse cap.have provided special multi-meters as needed |
| 46 | Co.to provide large & specialty tools | No | Provided only on an as needed basis |
| 47 | Co. to provide standard consumable items | No | No "open ended" oral agreement to provide consumable items |
| 48 | Co. to provide PPE options for emp preference | No | No oral agreement for "employee preferences" of PPE |
| 49 | Co. to provide cold weather & rain gear | No | No oral agreement for "unusual conditions within the plt" (See PPE prog) |
| 50 | Co. to provide safety incident reports to Un. | No | Agree to provide reports signed by the employee only |
| 51 | Co. provided on-shift safety mtgs. Monthly | No | Currently these have been discontinued as being ineffective |
| 52 | Joint accident invest.with copies to Union | No | Have done joint investigations in past but with no oral agreement to contin. |
| 53 | Monthly hrly safety designee audits Co paid | No | Currently these have been discontinued as being ineffective |
| 54 | Hrly truck mech will maintain parts inventory | Yes | This system is currently in place |
| 55 | Co. will replace broken craft tools, boxes,etc. | No | Broken tools replaced & repair kits but damaged toolboxes on ind. Basis |
| 56 | Co. will provide hand cleaners, soap, creams | No | No oral agreement but have provided in the past, as needed |
| 57 | Co. will provide full time certified nurse on 1st | No | No oral agreement to provide as "full time" |
| 58 | Co.to supply o-a torches,tips,etc to crafts | No | No oral agreement but have provided in the past, as needed |
| 59 | Co.to supply torch welding &PPE, etc. | No | No oral agreement but have provided in the past, as needed |
| 60 | Co.to supply non-abrasive eyeglass cleaning | No | No oral agreement but have provided in the past, as needed |
| 61 | Co.to supply pre-moistened hand towels | No | No oral agreement but have provided in the past, as needed |
| 62 | Co.to supply solvent-based parts cleaners | No | No oral agreement but have provided in the past, as needed |
| 63 | Co.to supply safety L-O hasps, & L-O equip. | No | Have provided as needed in the past |
| 64 | Co.to supply equip.etc for Fire Brigade trning | No | No oral agreement - have not been doing monthly training sessions |
| 65 | Co.to provide CPR trng/re-cert.to Fire Brigade | Yes | Can be completed by a 3rd party provider at the Company's discretion |
| 66 | Co.to provide annual med exams-Fire Brigade | Yes | Provided for Fire Brigade members required to wear SCBA's only |
| 67 | Co.to provide Spill Response Tm-Fire Brigade | No | No oral agreement for quarterly training sessions |
| 68 | Co.to provide 1st Responder recert-Fire Brig. | No | No oral agreement |

| # | Union Oral Agreement Issue | Mgt. Response | Mgt. Comments and Position |
|---|---|---|---|
| 69 | Release Fire Brigade from other duties -Emer | Yes | Released for Emergency situations only |
| 70 | Co.to repl.damaged clothing/shoes-Fire Brig. | No | No oral agreement to replace clothing - turnout & spill response gear prov. |
| 71 | Co.to supply emer.resp.equip. & supplies | No | No oral agreement to provide all equipment and supplies listed |
| 72 | Co.to supply t-o gear,SCBA,firefighting equip. | No | No oral agreement to provide all equipment and supplies listed |
| 73 | Co.to supply variety of dust masks&respirator | No | No oral agreement provided dust masks only - others asf necessary & req |
| 74 | Co.will provide adequate lockers and locks | Yes | Provided lockers and locks in past |
| 75 | Maintain unique maint."buddy system"-Sats. | No | No oral agreement see CBA for Saturday scheduling |
| 76 | Complete workstation re-align.in maint.dept. | No | Has occurred in past at Company's discretion |
| 77 | Orient.maint.new hires on work assign/equip. | No | Has occurred in past on a frequent basis for new hires and re-hires |
| 78 | Emps.can report off work by voice mail mess. | No | No oral agreement - Must talk with an authorized member of mgt |
| 79 | PH class will be given sch.Holiday off or pay | No | No oral agreement - Must be handled on individual basis with mgt input |
| 80 | Co.will maintain carpool parking year round | No | No oral agreement but have provided in the past |
| 81 | Co.to provide food,snack,beverages-Vend.mac | No | No oral agreement but have provided in the past |
| 82 | Co.to provide trk.shop mech assistance in PL | No | No oral agreement but have provided battery jump & flat tire fill up only |
| 83 | Co.to provide equip.devices,clothing for HV eq. | No | Have provided on an as needed basis only in the past |
| 84 | Co.to provide machinists large measure tools | No | Have provided on an as needed basis only in the past |
| 85 | Co.to provide painters with necessary PPE | No | Have provided on an as needed basis only in the past |
| 86 | Union Reps.to attend Prod.Mtgs.- Co. paid | No | No oral agreement |
| 87 | Emp.bank acct & routing #'s not on paycheck | Yes | Both have been removed |
| 88 | No SS#'s will be displayed on benefit cards | No | See Goodyear benefit cards - SS# are on them |
| 89 | Emp.not required to complete leave application | No | No oral agreement |
| 90 | Co. will conduct annual class.trng.& re-cert. | No | No oral agreement |
| 91 | Co. will conduct annual fork trk.trng.& re-cert. | No | No oral agreement not required on an annual basis |
| 92 | Co. will provide inplant safety eyeglass service | No | See the CBA for these provisions |
| 93 | Volunteers for Sat OT sch IPO in-class nonvol | No | No oral agreement - Done by exception rather than a set procedure |
| 94 | Personal fans/heaters to be main/repl by Co. | No | No oral agreement for personal fans/heaters |
| 95 | Co.will maintain existing info.bulletin boards | No | No oral agreement to maintain "all existing" bulletin boards |
| 96 | Co.will maintain Union/Comm plant mailboxes | Yes | Currently provided |
| 97 | Co. will maintain inspirational bulletin board | No | Have had a similar type board but have tried to avoid religious messages |
| 98 | Co. will permit "Daily Bread" inspiration books | No | No oral agreement for "open distribution". Have allowed pass-outs on PT |
| 99 | Co & Un. to maintain JP for personalityconflict | No | Have included the Union in such conflicts where possible & if requested |
| 100 | Co.shall pay lost time for Safety Comm.Conf. | No | No oral agreement to provide "training associated with" |
| 101 | Co.to conduct quarterly LH mtgs - Co.Paid | No | No oral agreement to conduct on a quarterly meetings |
| 102 | Payroll errors corrected with advances ASAP | Yes | Has been done in past, if necessary. |
| 103 | Co.to reimburse emps.late bank fees/charges | No | Done from time to time but no oral agreement |

| # | Union Oral Agreement Issue | Mgt. Response | Mgt. Comments and Position |
|---|---|---|---|
| 104 | Co. will maintain existing pay phones in plant | No | Outside vendor maintained based upon income basis |
| 105 | Incorp. vacation scheduling in Maint. Dept. | No | No oral agreement |
| 106 | Emps. allowed to have dept. "pot luck" celebrat | No | No oral agreement - Mgt has permitted in the past |
| 107 | Emps. may accept food delivery at plant on PT | No | Plant has even posted notices prohibiting this in the past. |
| 108 | Emps. on FMLA not subject to 30 day re-cert | No | No oral agreement, also allowed by FMLA law |
| 109 | Incorp. "Holiday Periods During Susp. Time" | No | No oral agreement |



# United
# Steelworkers of
# America
### AFL-CIO/CLC

RUBBER/PLASTICS INDUSTRY CONFERENCE
Local Union No. 745
2496 E. Maize Road
Freeport, IL 61032
815/235-9713
FAX 815/232-7762

STEVE VANDERHEYDEN, President
DAN KREEGER, Vice President
DAVE SWANSON, Recording Secretary
LARRY TIMMS, Financial Secretary
JOHN FULLER, Treasurer

March 31, 2006

Hill Mayfield, Manager
Human Resources
Titan Tire Corporation of Freeport
3769 Route 20 East
Freeport, IL 61032

Dear Hill,

This letter should serve to follow-up from our discussion on March 28, regarding the Union's listing of oral agreements/past practices issued February 28, 2006.

Following our discussion this week, I have revised the original listing in a way to try to incorporate some of management's suggestions. I have enclosed Attachment A, which modifies the description of 19 items from our original list. Please review the modifications for the purpose of determining if each item is now acceptable to management.

In addition, I have provided a status report of all items from the original listing. You will notice that the status of each item at this time is indicated.

Attachment B is also attached, which represents a listing of information requested by the Union. This information is requested as it is necessary for the processing of our contractual obligations regarding this subject. Please forward the information requested as soon as possible, so that we may finalize which issues are not expected to be resolved by the parties and subject to arbitration. Thank you for your assistance in this matter.

Sincerely,

Steve Vanderheyden, President

SV/mm/C:\MSOffice\Vanhyden\oral2.doc
Encs.

**PLAINTIFF'S
EXHIBIT
4**



## Listing of Oral Agreements/Past Practices - Freeport Plant

| No. | Original Union Submission 2/28/06 | Mgmt Response 3/28/06 | Status |
|---|---|---|---|
| 1 | Definition of "emergency" for all contract purposes is condition such as fire, flood, explosions, catastrophic equipment failure, etc. | No | To Arb |
| 2 | Changes in performance expectations/day work goals can not be made without a change in the associated production process. | No | To Arb |
| 3 | Employees performing jury duty activities or reporting for jury selection as a result of a summons are not required to return to work for any portion of their shift should they not serve on this duty for the entire day. | No | Pending info request |
| 4 | Payment for lost time due to military duty leave will be made based on employee supplying orders/documents supplied by military – no other form required. | No | Pending info request |
| 5 | Regarding funeral leave, in the event the funeral is scheduled on a non-scheduled workday, the involved employee is not required to take that day(s) as part of his/her funeral leave. In the event the funeral is not scheduled near the death of the family member, the employee has the option to take the leave immediately rather than wait for the date of the funeral to be included in the leave period. | No | Pending mgmt response |
| 6 | In the event when a national holiday recognized by local banking facilities occurs on a normal payday, paychecks are distributed to employees one day prior to the holiday. | Yes | Pending |
| 7 | The placement procedures contained in Article VIII, Section 10 (b) (reference: by seniority) apply to placements for any reason and not only placements due to surplus. | No | Pending |
| 8 | Employees have general discretion regarding their work attire. As part of this, employees are not prohibited from wearing shorts in the plant. | No | Pending mgmt response |
| 9 | Company will continue current guidelines for summer help program. | Yes | Accepted/Resolved |
| 10 | During the 30 minutes immediately preceding and following the beginning or ending of any shift, no commercial or delivery vehicles are allowed to enter or exit the plant. | No | To Arb |
| 11 | Local 745 Office Manager to have access (as if she is a Titan employee) on company systems such as computer communications, plant access for meetings, etc. | No | To Arb |

3/31/2006

| No. | Original Union Submission 2/28/06 | Mgmt Response 3/28/06 | Status |
|---|---|---|---|
| 12 | permissible including COPE/PAC contributions, optional life insurance premiums, uniforms rental/cleaning, United Way contributions, court ordered child support payments, maintenance and garnishments payments, US savings bond purchases, and 401(k) contributions and loan payments. | No | Pending mgmt response |
| 13 | Employees are not subject to advancement in disciplinary steps for infractions of different work rules, and previous disciplinary action for a violation of one work rule is not relevant to the consideration of disciplinary action for violation of a different work rule. | No | Pending info request |
| 14 | Travel expense reimbursement rules for hourly employees (including Union representatives) when traveling on company work will. | No | Pending info request |
| 15 | The Company will provide suitable facilities for employees to have lockers, showers and bathrooms for employees. Additionally, all locker rooms, showers and bathrooms currently in use and maintained today remain open for use and sanitarily maintained at the company expense. | No | To Arb |
| 16 | The Company will provide the Union with a weekly report of Union dues withheld from employee's paychecks and send this report to the Union office. | No | Pending mgmt response |
| 17 | The Company will provide the Union with a weekly report of COPE/PAC contributions withheld from employee's paychecks and send this report to the Union Office. | No | Pending mgmt response |
| 18 | New hires/classification trainees will not be scheduled for work on Saturday unless they will be assigned to an available trainer. After satisfying the necessary training for each department, the scheduling of trainees on Saturday will replace a senior in-classification employee on that shift. | No | Pending mgmt response |
| 19 | Department 320 Pellet Truckers and Service Truckers will be provided relief for personal breaks and lunch period upon request. | No | Pending mgmt response |
| 20 | Incorporate "Guidelines for Department 320 Labor Moves" (dated 3-22-05) | No | To Arb |
| 21 | Straining of stock in Department 430 is considered "non-productive" work, and will only be scheduled on Saturday with voluntary labor. | No | To Arb |

3/31/2006

| No. | Original Union Submission 2/28/06 | Mgmt Response 3/28/06 | Status |
|-----|-----------------------------------|-----------------------|--------|
| 22 | The Company will provide the Union with reasonable private office space in the plant, including computer equipment and a telephone with outside access for Union business in this office. | Yes | Accepted/Resolved |
| 23 | The Company will provide the Local Union with the necessary computer communication capabilities between the Union Office and the plant and maintain that equipment at its expense. | No | To Arb |
| 24 | the Company's lease arrangement and associated supplies cost. | No | To Arb |
| 25 | The company will provide the Union with a weekly report of labor movements in a form called the "Daily Labor Report", including all information previously supplied by the company and send this report to the Union Office. | No | To Arb |
| 26 | The Company will provide the Union with a weekly "Sick Leave Report" containing the employee's name, shift, department and clock card number and last day worked for all employees on sick leave. In addition, the report will indicate wither or not the employee has been placed on inactive status (employment roll). | No | To Arb |
| 27 | The Company will provide the Union with notice of changes in employee address and phone number submitted to the company by hourly employees and send the changes to the Union Office. | Yes | Accepted/Resolved |
| 28 | The Company will permit employees to use the recreation area on the East End of the plant property. Employees will be permitted to use the baseball diamond, the trap house and trap range along with the "Sport Clubhouse" enclosed facility. The Company will continue to maintain the facilities at its expense. | No | Pending |
| 29 | The Company will make the necessary arrangements so those employees may elect to purchase US savings bonds by payroll deduction. | No | To Arb |
| 30 | Employees will not be required to display or wear any Company badges while on duty, or use any devices to determine their identity other than standard employee ID badges and badge readers. | No | To Arb |
| 31 | In the event an employee loses an employee badge, or it is damaged or lost in the course of normal work, it will be replaced at the expense of the Company. | No | To Arb |

3/31/2006

| No. | Original Union Submission 2/28/06 | Mgmt Response 3/28/06 | Status |
|---|---|---|---|
| 32 | The Company will continue to send plant Fire Brigade Emergency Medical Technician personnel to a qualifying annual training session at company expense. | Yes | Accepted/Resolved |
| 33 | All employees, both hourly and salaried, are to be canvassed by plant personnel for contributions via payroll deductions to the area United Way organization with those monies forwarded to the United Way offices on a monthly basis. | No | To Arb |
| 34 | A parking space inside the plant near the employee entrance will be reserved for use by selected United Way contributors. The selection process will be mutually agreeable. | No | To Arb |
| 35 | The UB time charge for the Union Vice President will be 4 hours per day to the 800022 account and 4 hours per day to the 800023 account for each regularly scheduled workday, Monday through Friday. | No | To Arb |
| 36 | Regarding charging of time to the Union business account 800023, the Union is only charged such time as is required for the Union representative to perform necessary Union representation duties, and not for all time spent away from his job. Travel time and time spent to locate appropriate member of management is to be at the expense of the company. | No | To Arb |
| 37 | The Company will provide outside break areas at designated locations. At each of these locations, adequate picnic tables will be provided and maintained at the company expense. | Yes | Accepted/Resolved |
| 38 | involved of the date, time and location of all grievance meetings, make necessary schedule and contact adjustments, and notify all appropriate persons of any changes within the time frames specified in the Agreement. | No | To Arb |
| 39 | The Company will provide a copy of all derogatory write-ups (of any types) to the disciplined employee. | No | To Arb |
| 40 | Employees will be allowed to enter the plant at any reasonable time prior to the start of their shift, and/or exit at any reasonable time following their shift. | No | To Arb |
| 41 | Suitable weight-belts will be supplied to employees upon request. | No | Pending mgmt response |
| 42 | Metric tools will be supplied by the Company for any employee assigned to use them. | No | To Arb |

3/31/2006

| No. | Original Union Submission 2/28/06 | Mgmt Response 3/28/06 | Status |
|---|---|---|---|
| 43 | The Company is to supply necessary machine tooling and cutters to machinist classification members, and drills, taps and thread chasers to all employees assigned to use them. | No | To Arb |
| 44 | The Company is to supply all heavy lifting equipment. | No | Pending |
| 45 | The Company is to supply trouble shooting meters to electricians, instrument repairmen and HVAC and other craftsmen as appropriate. | No | Pending mgmt response |
| 46 | The Company is to supply all required large tools and specialty tools which are not standard hand tools. | No | To Arb |
| 47 | The company will supply standard consumable items normally used on the job, including but not limited to flashlights and batteries, tape measures, variety of necessary knives, shears, rags, allen wrenches (metric and SAE), plastic hammers, pens and pencils including steel marking, chalk, baseball bats, abrasive wheels, grinding and cutoff disks, and crayons. | No | Pending mgmt response |
| 48 | The Company is to supply Personal Protective Equipment options for employee preference; different types and styles of hearing protection, eye protection. Also the company will provide disposable coveralls, plastic gloves and leather gloves appropriate for the tasks assigned, upon request. | No | Pending info request |
| 49 | The Company is to supply adequate cold weather gear and rain gear to employees when required by inclement outside weather or unusual conditions within the plant. | No | To Arb |
| 50 | Minor Injury Report forms, Near Miss Report forms, and Property Damage Report forms will be completed where appropriate and copies promptly provided to the Union. | No | To Arb |
| 51 | The Company to provide for monthly on-shift departmental safety meetings in designated locations with all employees. | No | Pending info request |
| 52 | Accident investigation will be conducted jointly by supervisors and hourly safety designees, with copies of all reports provided to the Union. | No | To Arb |
| 53 | Hourly safety designees will conduct monthly on-shift safety audits with necessary time charged to the appropriate Company paid account. | No | Pending |
| 54 | Truck mechanics will maintain the parts inventory for equipment repairs. The Company will provide the necessary computer equipment and an outside phone line for this purpose. | Yes | Accepted/Resolved |

3/31/2006

| No. | Original Union Submission 2/28/06 | Mgmt Response 3/28/06 | Status |
|---|---|---|---|
| 55 | The Company will replace at its expense broken tools for craftsmen, damaged toolboxes and provide tool repair kits where appropriate. | No | To Arb |
| 56 | The Company will provide hand cleaners, soap (in bathrooms and showers) and hand creams. | No | To Arb |
| 57 | The Company will provide a full time, certified nurse during 1st shift hours. | No | To Arb |
| 58 | The Company to supply oxy-acetylene torches, tips, tip cleaners and ignition strikers to craftsman assigned to this type of activity. | No | pending mgmt response |
| 59 | The Company to supply torch and welding supplies (solder and solder irons) and necessary protection equipment including polarized face shields, weld helmets, replacement weld helmet lenses, leather clothing, and hot work gloves. | No | Pending mgmt response |
| 60 | The Company will supply non-abrasive eyeglass cleaning supplies. | No | Pending mgmt response |
| 61 | The Company will supply hand towels, including towels pre-moistened with cleaning agents. | No | Pending mgmt response |
| 62 | The Company will supply solvent-based parts cleaners and necessary protective clothing. | No | To Arb |
| 63 | The Company will supply appropriate safety lockout hasps, other lockout apparatus, and locks for isolation of all types of hazardous energy. | No | To Arb |
| 64 | The Company will provide the equipment and resources for monthly training sessions for Fire Brigade members. | No | Pending info request |
| 65 | The Company will conduct annual CPR training and re-certification for Fire Brigade members. | Yes | Accepted/Resolved |
| 66 | The Company will provide for an annual medical physical examination for Fire Brigade members. | Yes | Accepted/Resolved |
| 67 | The Company will provide a Spill Response Team as part the Fire Brigade, and will provide the necessary resources for regular, scheduled training sessions (not less than quarterly) for Spill Response Team members. | No | Pending |
| 68 | The Company will provide "First Responder" re-certification for Fire Brigade every 3 years. | No | Pending mgmt response |
| 69 | Fire Brigade members will be considered to be previously released from other regular duties as a result of notice of any plant emergency. | Yes | Accepted/Resolved |
| 70 | The Company will replace at its expense, damaged clothing for Fire Brigade members including footwear, if damaged while performing Fire Brigade duties. | No | To Arb |

| No. | Original Union Submission 2/28/06 | Mgmt Response 3/28/06 | Status |
|---|---|---|---|
| 71 | The Company to supply emergency response equipment and supplies, including plant ambulance with gurney, defibrillator and all appropriate medical supplies. | No | To Arb |
| 72 | The Company to supply turnout gear, SCBA, fire fighting equipment and supplies, and spill containment equipment and supplies. | No | To Arb |
| 73 | The Company will supply a variety of dust masks and personal respirators appropriate for job tasks and area assigned upon request. | No | To Arb |
| 74 | The Company will provide adequate personal lockers and locks. | Yes | Accepted/Resolved |
| 75 | Maintain the unique "buddy system" maintenance for Saturday scheduling in the maintenance department. | No | To Arb |
| 76 | Complete workstation re-alignment in maintenance department classifications occur by seniority when management makes significant work assignment changes to the workstation job description of one or more workstations in the classification. In the event of a vacancy or workstation realignment in the maintenance department, all workstations are subject to assignment by seniority on shift, without restriction to the number of moves involved. | No | To Arb |
| 77 | Orientation of new hires in the maintenance department includes assignment of work with other craftsmen in all areas of the plant for equipment familiarization. | No | To Arb |
| 78 | Employees that report off for work by leaving a message on voice mail at the designated phone number for this purpose before the start of their assigned shift are considered to have satisfied their contractual obligation for reporting off. | No | To Arb |
| 79 | Powerhouse classification employee(s) that will not receive a day off on a scheduled holiday due to the unique shift schedule in this classification will be afforded his choice of holiday pay rate or a scheduled day off on one of the days adjacent to the holiday. | No | To Arb |
| 80 | The Company will maintain a designated section for carpool parking year round. During spring, summer and fall, the Company will maintain a designated parking section for motorcycle parking. | No | To Arb |
| 81 | The Company will provide food, snack and hot and cold beverage vending services. | No | To Arb |

3/31/2006

| No. | Original Union Submission 2/28/06 | Mgmt Response 3/28/06 | Status |
|---|---|---|---|
| 82 | The Company will provide truck shop mechanics to assist employees with automobile troubles while in the parking lot, if requested. | No | To Arb |
| 83 | and clothing for work performed on high voltage equipment. | No | To Arb |
| 84 | The Company to provide machinist classification with necessary large measuring tools. | No | To Arb |
| 85 | The Company to provide anyone assigned to perform painting work necessary protective equipment, including respiration equipment. | No | To Arb |
| 86 | Union representatives will continue to attend the "production meetings" as a company called meeting. | No | To Arb |
| 87 | Employee bank account and routing numbers are not to be displayed on paychecks and/or SUB account checks. | Yes | Accepted/Resolved |
| 88 | No social security numbers will be displayed on the employee benefit cards. | No | Pending |
| 89 | Employees that supply medical evidence to support absence from work for medical reasons will not be required to complete a separate leave application. | No | To Arb |
| 90 | The Company will conduct annual classification training and re-certification testing. | No | Pending |
| 91 | The Company will conduct annual fork-truck driving training and re-certification testing. | No | Pending |
| 92 | The Company will provide for in-plant prescription safety eyeglass service, in addition to replacement, fitting and repair service. | No | To Arb |
| 93 | Employees who volunteer for Saturday overtime who do not do so within the contractual deadlines (referred to as "Redline" signers) will be scheduled in place of any in-classification forced non-volunteers by seniority that accepts being removed from the schedule. | No | To Arb |
| 94 | Individual workstations that have been fitted with personal fans and heaters will be maintained or replaced at Company expense. | No | Pending mgmt response |
| 95 | The Company will maintain all existing information bulletin boards, both informational boards and/or overtime award posting boards. | No | To Arb |
| 96 | The Company will maintain plant mailboxes for Union mail and for various hourly committee members. | Yes | Accepted/Resolved |
| 97 | The Company will maintain existing bulletin board for posting of inspirational messages (outside Union Safety office). | No | To Arb |

3/31/2006

| No. | Original Union Submission 2/28/06 | Mgmt Response 3/28/06 | Status |
|---|---|---|---|
| 98 | The Company will permit the open distribution of "Daily Bread" inspirational booklets. | No | To Arb |
| 99 | The Company and Union will maintain the joint process for handling personality conflicts between all employees using mutually agreeable procedures. | No | To Arb |
| 100 | The Company shall pay the lost time for the Safety Committee to attend any conference or training associated with Article XII Section 1 (i) and (o). | No | Pending mgmt response |
| 101 | The Company shall continue to conduct quarterly meetings regarding the Lead Hand program with Lead Hands and backup Lead Hands, Lead Hand Shift Coordinators, Oversight and Driver Committee members, and EI Coordinators at company expense. | No | To Arb |
| 102 | Payroll errors will be corrected as soon as possible, and if necessary, by providing a payroll advance to involved employees, which will be reconciled in subsequent payroll periods. | Yes | Accepted/Resolved |
| 103 | Company will be responsible to reimburse employees for any bank fees and other charges that are the result of late EFT under direct deposit. | No | Pending info request |
| 104 | The Company will maintain the existing payphones in the plant. | No | To Arb |
| 105 | Incorporate vacation scheduling methods for weekly and daily vacation in Maintenance Department. | No | To Arb |
| 106 | Employees will be allowed to participate in departmental "pot luck" type celebrations during scheduled breaks during certain holiday periods and birthdays. | No | Pending mgmt response |
| 107 | Upon request, employees may accept food delivery at the plant during their scheduled breaks and personal time. | No | Pending info request |
| 108 | Employees that have qualifying FMLA conditions which are chronic and ongoing in nature will not be subject to a mandatory 30 day re-certification requirement. | No | Pending info request |
| 109 | Incorporate "Holiday Periods During Suspension Time" understanding (dated 5/21/1968) | No | To Arb |

3/31/2006

# Attachment A

## Amendments to Union Submission of February 28, 2006
## Listing of Oral Agreements/Past Practices

| Item No. | Modified Description of Item Following Our Discussion of 3/28/06 |
|---|---|
| 5 | Regarding funeral leave, in the event the funeral is scheduled on a non-scheduled workday, the involved employee is not required to take that day(s) as part of his/her funeral leave. In the event the funeral (or memorial service) is not scheduled to take place near the death of the family member, the employee has the option to take the leave immediately rather than wait for the date of the funeral (or memorial service). |
| 8 | Employees have general discretion regarding their work attire including the wearing of shorts, unless the attire is prohibited by a safety rule established by the Joint Safety & Health Committee in the future. |
| 12 | Payroll deductions will be available for all items currently permissible including COPE/PAC contributions, optional life insurance premiums, uniforms rental/cleaning, United Way contributions, court ordered child support payments, maintenance and garnishments payments,  and 401(k) contributions and loan payments. |
| 14 | Travel expense reimbursement rules for hourly employees (including Union representatives) will be consistent with past rules under Goodyear when traveling on approved company work for Titan. |
| 16 | The Company will provide the Union with a monthly report of Union dues withheld from employees' paychecks and send this report to the Union office. |
| 17 | The Company will provide the Union with a monthly report of COPE/PAC contributions withheld from employees' paychecks and send this report to the Union Office. |
| 18 | New hires/classification trainees will not be scheduled for work on Saturday unless they will be assigned to an available trainer. After satisfying the necessary training for each department, the scheduling of trainees on Saturday will replace a senior in-classification non-volunteer employee on that shift. |
| 19 | Department 320 Pellet Truckers and Service Truckers will be provided relief for personal breaks and lunch period upon request with management approval. |
| 41 | Suitable weight-belts will be supplied to employees upon request, when providing recommendation from personal doctor. |
| 45 | The Company is to supply trouble shooting meters to electricians, instrument repairmen and HVAC and other craftsmen as required by their assignment. |
| 47 | The company will supply standard consumable items as required on the job, including but not limited to flashlights and batteries, tape measures, variety of necessary knives, shears, rags, hex key wrenches (metric and SAE), plastic hammers, pens and pencils including steel marking, chalk, baseball bats, abrasive wheels, grinding and cutoff disks, and crayons. |
| 48 | The Company is to supply a variety of Personal Protective Equipment options |

| | |
|---|---|
| | which include different types and styles of hearing protection and eye protection. Also the company will provide, upon request, disposable coveralls, plastic gloves and leather gloves appropriate for the tasks assigned. |
| 58 | The Company to supply oxy-acetylene torches, tips, tip cleaners and ignition strikers as necessary to craftsman assigned to this type of activity. |
| 59 | The Company to supply torch and welding supplies (solder and solder irons) and necessary protection equipment including polarized face shields, weld helmets, replacement weld helmet lenses, leather clothing, and hot work gloves. |
| 60 | The Company will supply non-abrasive eyeglass cleaning supplies for use in the plant. |
| 61 | The Company will supply hand towels, including disposable towels pre-moistened with cleaning agents for use in the plant. |
| 94 | Individual workstations that have been fitted with fans and heaters will be maintained or replaced at Company expense. |
| 100 | The Company shall pay the lost time for the Safety Committee to attend any approved conference or training associated with Article XII Section 1 (i) and (o). |
| 106 | Employees will be allowed to participate in departmental "pot luck" type celebrations during scheduled breaks during certain holiday periods, as well as snacks for birthday celebrations. |

# Attachment B

## Listing of Information Requested Regarding
## Itemized Listing of Oral Agreements/Past Practices

| Item No. | Information Requested |
|---|---|
| 3 | Specific examples of occurrences that employees were expected to return to work the same day following release from jury duty |
| 4 | Copy of form for military leave makeup pay used by Goodyear at Freeport plant prior to January 1, 2006 |
| 13 | Specific examples of occurrences in which this was premise not applied. |
| 14 | Copy of Titan travel expense reimbursement form and rules for reimbursement |
| 35 | Copy of record that shows daily time charges for Dan Kreeger from each day he worked from January 1, 2004 to December 31, 2005. |
| 40 | Specific examples of occurrences of any employee being denied access to the plant at any time prior to the start of their scheduled time to work. |
| 48 | Copy of records indicating any/all purchases of earplugs and other hearing protection, safety glasses and faces shields, and gloves of all types for the plant in 2005. |
| 51 | Record of monthly on-shift departmental safety meetings held during 2005. |
| 55 | Specific examples of occurrences of Department 119 employee tool box damage that was not repaired/replaced by management upon request. |
| 57 | Copy of agreement/contract with Health Works which was used as the basis for providing on site nurse for the plant during 2005. |
| 60 | Copy of records indicating any/all purchases of eyeglass cleaning supplies for the plant in 2005. |
| 61 | Copy of records indicating any/all purchases of disposable towels pre-moistened with cleaning agents for the plant in 2005. |
| 62 | Copy of records indicating any/all purchases of solvent-based parts cleaners and protective clothing used in connection with these cleaners for the plant in 2005. |
| 64 | Copy of records documenting the training session schedule for Fire Brigade members during 2004 and 2005. |
| 71 | Copy of records indicating any/all purchases of medical supplies for the plant in 2005. |
| 72 | Copy of records indicating any/all purchases of spill containment equipment and supplies for the plant in 2005. |
| 73 | Copy of records indicating any/all purchases of dust masks and personal respirator supplies for the plant in 2005. |
| 76 | Specific examples of when a complete workstation re-alignment by seniority in maintenance department classifications was not conducted when the Union brought its expectation to do so to management's attention. |
| 77 | Specific examples of when orientation of new hires in the maintenance department did not include assignment of work with other craftsmen in all areas of the plant to facilitate equipment familiarization. |
| 80 | Copy of all previous plant postings and other internal written communications on the subject of the plant carpool parking program and area, and the motorcycle parking |

| | area. This should include, but not be limited to, application forms and rules for parking in these areas. |
|---|---|
| 81 | Copy of the agreement/contract for food and beverage service at the plant with Aramark. |
| 84 | Copy of all previous plant postings and other internal written communications on the subject of the use of truck shop employees to assist employees with automobile trouble in the plant parking lot. |
| 89 | Copy of form used by Goodyear to distribute to Freeport employees for the purpose of applying for personal medical leave in 2005. |
| 92 | Copy of all previous plant postings and other internal written communications on the subject of in-plant prescription safety eyeglass service. In addition, a copy of any agreement/contract with the provider used for this service. |
| 99 | Copy of any/all documents regarding the plant's conflict resolution procedure for employees. |
| 103 | Specific examples of occurrences when management refused to reimburse employees for any bank fees and other charges that are the result of late EFT under direct deposit. |
| 107 | Copy of any/all records indicating discipline issued for this violation of a rule or policy this item. In addition, copies of any/all posted notices and other internal written communications on this subject. |
| 108 | Copy of any statute, federal regulation, or other documentation which the Company relies on to support its claim that it is permissible to require employees that have qualifying FMLA conditions which are chronic and ongoing in nature to be subject to a mandatory 30 day re-certification requirement. |



May 17, 2006

Steve Vanderheyden, President
USW Local No. 745
2496 E. Maize Road
Freeport, IL 61032

Subject:     Oral Modifications – Management Response and/or
                Modifications to Union Submission of March 31, 2006

Dear Steve,

Enclosed please find management's response and/or proposed modifications
to the document submitted by the Union as "Attachment A" on March 31,
2006. The enclosed document, entitled as "Attachment A-1", addresses each
of the 19 items submitted for review from your "Attachment A" and can be
summarized in three different categories as follows:

                Yes = Management accepts revised modification

                No = Management cannot accept revised modification

                No = Management cannot accept revised modification but
                proposes a further modified description of the Item as noted

If you have questions regarding the enclosed "Attachment A-1" or this matter
in general, please let me know.

                        Sincerely,

                        Hill Mayfield
                        Manager, Human Resources

Enclosure
CC:  Gene LaSuer
      Kirk Toelke
      Dale Sandell

TITAN TIRE CORPORATION OF FREEPORT
3769 Route 20 East
Freeport, IL  61032-9652
(815) 235-4185 * Fax: (815) 235-6209



PLAINTIFF'S
EXHIBIT
5

Attachment A-1

**Company Response and/or Modifications to Union Submission
of March 31, 2006**

| Item No. | Union Proposed Modified Description of Item on 3/31/06 | Company Response of 5/11/06 to Union modifications of 3/31/06 | Company Proposed Modified Description of Item on 5/11/06 |
|---|---|---|---|
| 5 | Regarding funeral leave, in the event the funeral is scheduled on a non-scheduled workday, the involved employee is not required to take that day(s) as part of his/her funeral leave. In the event the funeral (or memorial service) is not scheduled to take place near the death of the family member, the employee has the option to take the leave immediately rather than wait for the date of the funeral (or memorial service). | No | None – Maintain Management Response Position of document dated 3/28/06 |
| 8 | Employees have general discretion regarding their work attire including the wearing of shorts, unless the attire is prohibited by a safety rule established by the Joint Safety & Health Committee in the future. | No | None – Maintain Management Response Position of document dated 3/28/06 |
| 12 | Payroll deductions will be available for all items currently permissible including COPE/PAC | Yes | |

| | | | |
|---|---|---|---|
| | contributions, optional life insurance premiums, uniforms rental/cleaning, United Way contributions, court ordered child support payments, maintenance and garnishments payments,  and 401(k) contributions and loan payments. | | |
| 14 | Travel expense reimbursement rules for hourly employees (including Union representatives) will be consistent with past rules under Goodyear when traveling on approved company work for Titan. | No | Travel expense reimbursement rules for hourly employees (including Union representatives) will be consistent with Titan expense reimbursement when traveling on approved company work for Titan. |
| 16 | The Company will provide the Union with a monthly report of Union dues withheld from employees' paychecks and send this report to the Union office. | Yes | |
| 17 | The Company will provide the Union with a monthly report of COPE/PAC contributions withheld from employees' paychecks and send this report to the Union Office. | Yes | |
| 18 | New hires/classification trainees will not be scheduled for work on Saturday unless they will be assigned to an available trainer. After satisfying the necessary training for each department, the | No | None – Maintain Management Response Position of document dated 3/28/06 |

|  | | | |
|---|---|---|---|
|  | scheduling of trainees on Saturday will replace a senior in-classification non-volunteer employee on that shift. | | |
| 19 | Department 320 Pellet Truckers and Service Truckers will be provided relief for personal breaks and lunch period upon request with management approval. | Yes | |
| 41 | Suitable weight-belts will be supplied to employees upon request, when providing recommendation from personal doctor. | Yes | |
| 45 | The Company is to supply trouble shooting meters to electricians, instrument repairmen and HVAC and other craftsmen as required by their assignment. | Yes | |
| 47 | The company will supply standard consumable items as required on the job, including but not limited to flashlights and batteries, tape measures, variety of necessary knives, shears, rags, hex key wrenches (metric and SAE), plastic hammers, pens and pencils including steel marking, chalk, baseball bats, abrasive wheels, grinding and cutoff disks, and crayons. | Yes | |
| 48 | The Company is to supply a variety of Personal Protective | Yes | |

|  | | | |
|---|---|---|---|
|  | Equipment options which include different types and styles of hearing protection and eye protection. Also the company will provide, upon request, disposable coveralls, plastic gloves and leather gloves appropriate for the tasks assigned. | | |
| 58 | The Company to supply oxy-acetylene torches, tips, tip cleaners and ignition strikers as necessary to craftsman assigned to this type of activity. | Yes | |
| 59 | The Company to supply torch and welding supplies (solder and solder irons) and necessary protection equipment including polarized face shields, weld helmets, replacement weld helmet lenses, leather clothing, and hot work gloves. | No | The Company will supply torch and welding supplies (solder and solder irons) and necessary protection equipment including polarized face shields, weld helmets, replacement weld helmet lenses, leather clothing, and hot work gloves as necessary for this type of work. |
| 60 | The Company will supply non-abrasive eyeglass cleaning supplies for use in the plant. | Yes | |
| 61 | The Company will supply hand towels, including disposable towels pre-moistened with cleaning agents for use in the plant. | No | The Company will supply hand towels as necessary for use in the plant. |
| 94 | Individual workstations that have been fitted with fans and heaters | No | None – Maintain Management Response Position of document |

| | | | dated 3/28/06 |
|---|---|---|---|
| | will be maintained or replaced at Company expense. | | |
| 100 | The Company shall pay the lost time for the Safety Committee to attend any approved conference or training associated with Article XII Section 1 (i) and (o). | No | The Company shall pay the lost time for the Safety Committee to attend any management approved conference or training associated with Article XII, Section 1(i) and (o). |
| 106 | Employees will be allowed to participate in departmental "pot luck" type celebrations during scheduled breaks during certain holiday periods, as well as snacks for birthday celebrations. | No | Employees will be allowed to participate in departmental "pot luck" type celebrations during scheduled breaks during Thanksgiving & Christmas periods, as well as snacks for birthday celebrations with prior management approval. |

In the matter of the Arbitration Between

**UNITED STEELWORKERS
LOCAL NO. 745**

And

**TITAN TIRE COMPANY**

Both of Freeport, Illinois

**ARBITRATION # 07-07**

**GRIEVANCE #G06-199**

---

| THE GRIEVANCE |
| --- |

**Employee:** Local 745  **Department:** All  **Clock Card No:** All

**Shift:** All  **Job:** All

**Date & Nature of Grievance:** October 23, 2006  Denying United Way Payroll deductions, plant campaign, and United Way parking spaces

**Contract Clause Involved:** Article XI, Section 7

**Settlement Desired:** To be made whole

---

**ISSUE**

Did the Company violate the Collective Bargaining Agreement when it discontinued the joint annual United Way campaign, discontinued the system of payroll withholding for employee United Way contributions, and discontinued the special parking spaces for randomly selected contributors?


PLAINTIFF'S EXHIBIT
6

## BACKGROUND

The Freeport tire plant has been in operation since December 1963 as a Kelly Springfield Tire factory owned and operated by the Goodyear Tire and Rubber Company. On January 1, 2006, Titan Tire Corporation of Freeport purchased the facility from Goodyear. Prior to the sale, Titan Tire negotiated a labor agreement with United Steelworkers Local Union No. 745. Much of the existing language was carried over into the new contract, but not all. New provisions were crafted for the purpose of regulating the impact of certain oral agreements and past practices on the parties' new Collective Bargaining Agreement.

Issues related to a dispute of this type are before the arbitrator today. Specifically, the issue in the instant grievance relates to the past practices of the annual campaign for voluntary employee contributions for the United Way of Northwest Illinois. These joint campaigns have been conducted in the Freeport plant for many years. All plant employees were individually and privately canvassed by teams of hourly employees to consider authorizing a weekly payroll deduction to be forwarded to the United Way of Northwest Illinois organization. This organization represents approximately 30 member companies and non-profit agencies in the immediate area surrounding the Freeport plant.

Each individual employee who volunteered to participate in payroll withholding was provided an authorization card, which he or she completed and signed. The card included basic information about the authorization period and the amount authorized for withholding by the employee. The employee signed and dated the card to authorize the withholding. The card was forwarded to the plant's payroll processing department. Following successful solicitation of plant employees, voluntary contributions were withheld from employees' weekly pay checks. The campaign included considerable pre-canvas publicity, prizes to be provided to employees for

participation, and a communication strategy regarding the impact of United Way agencies in our area. The campaign was conducted jointly. During the past 15 years, the Union has used 4 different hourly Campaign Coordinators; Dan Kreeger, Dale Simpson, Meryl Foat, and Dale Sandell.

Prior to the sale, the annual campaign had been conducted for the 2006 payroll year. In the month of September 2005, the annual United Way campaign was held. The campaign was for the 2006 year and the plant was canvassed by four two person teams of hourly employees. This canvas was done over a one week time period, and each solicitor was excused from their regular job assignment for the duration of the canvas. Any employee who was on vacation or on any other leave of absence during that week would be contacted by the Union United Way Campaign Coordinator upon their return to work. Throughout the year of 2006 the United Way deductions were collected from the employees pay checks and forwarded to the United Way.

On September 21, 2006, and again on September 28, 2006, Dale Sandell and salaried employee Ann Frint (Goodyear's campaign coordinator for the 2005-2006 campaign) met to begin preparations for the 2006-2007 campaign. October 4, 2006, Dale Sandell received a telephone call from Human Resource Manager Hill Mayfield. The call also included Ann Frint, who was in Mayfield's office during the call. Mayfield informed Frint and Sandell that Titan management had made the decision not to allow a canvas for contributions to the United Way to be conducted at the plant for 2007 contributions. In addition, Titan management had decided to discontinue payroll withholdings for United Way contributions.

After several unsuccessful attempts by the Union to resolve the dispute, a grievance was filed on October 23, 2006 to protest the failure to recognize the past practices associated with the plant's United Way relationship. The grievance has been processed through the grievance

procedure and remains unresolved. There are no issues of arbitrability and the issue is properly

before the arbitrator today for resolution.

**UNION'S POSITION**

The Union maintains that the Company has violated the Collective Bargaining

Agreement by failing to recognize and continue the oral agreement/past practices that existed

regarding the subject of United Way support. Specifically, the Union asserts that the Company

has failed to recognize and honor controlling oral agreements/past practices related to the United

Way annual campaign.

The plant opened in 1963, and in 1964 the Union was recognized by Goodyear to

represent hourly employees. This long relationship has included positive experiences with work

rules, grievance processing and resolution and past practices which have become an integral part

of the working culture at the plant. During the 2006 contract negotiations with Titan, the parties

established contractual protections to preserve important past practices established during

Goodyear's ownership of the plant. Article XI, Section 7 was created and included in the 2006

Agreement with Titan.

Article XI, Section 7 reads in relevant part:

**No oral modifications to the Agreements or oral representations with Goodyear regarding: (a) the Agreements, (b) grievance settlements or (c) past practices that occurred prior to the effective date of these Agreements will be binding on the Company, nor will they be admissible in arbitration proceedings, unless specifically adopted by the Company in writing after the effective date of these Agreements. By "specifically adopted by the Company in writing" includes items in this Agreement as well as those adopted by the following procedure:**

**(1) Within 60 days of the effective date, the union must present a list of all oral modifications, grievance settlements or past practices to the Company for review.**

**(2) Within 30 days of the date of presentation of the list, the Company will investigate all oral modifications, grievance settlements or past practices or ask that the item disputed be specially set before an arbitrator for resolution. The**

4

**standard for the arbitrator will be whether the oral agreement existed at least one day prior to the effective date of this Agreement.**

At the time the Union was developing its submission under the above referenced provision, the Union sought to ensure the continuation of the past practices related to the annual United Way campaign. For this reason, it included this subject in its listing of past practices and oral agreements submitted to the Company as required by Article XI, Section 7. On February 28, 2006, a letter was issued to Human Resources Manager Hill Mayfield from the Steve Vanderheyden, Local Union President, which contained the listing of oral agreements/past practices the Union was seeking to be carried forward into the Titan Agreement. This list contained 109 past practice/oral agreement items that the Union wanted to document and continue under the terms of the Titan Collective Bargaining Agreement. This listing included 3 items which relate to the annual United Way campaign.

Item #12 reads:

**Payroll deductions will be available for all items currently permissible including COPE/PAC contributions, optional life insurance premiums, uniforms rental/cleaning, United Way contributions, court ordered child support payments, maintenance and garnishments payments, US savings bond purchases, and 401(k) contributions and loan payments.**

Item #33 reads:

**All employees, both hourly and salaried, are to be canvassed by plant personnel for contributions via payroll deductions to the area United Way organization with those monies forwarded to the United Way offices on a monthly basis.**

Item #34 reads:

**A parking space inside the plant near the employee entrance will be reserved for use by selected United Way contributors. The selection process will be mutually agreeable.**

On March 28, 2006, the Company provided a response to the Union submission by letter on March 28, 2006. The Company's response indicated that it accepted 14 items. The other 95 were partially or totally rejected by management. Regarding item #12, the Company response was:

**No. Done in past but Titan does not have Savings Bond capability.**

Regarding item #33, the Company response was:

**No. Has been done in past but is always a mgt decision to participate or not.**

Regarding item #34, the Company response was identical to that of item #33.

The Union responded with a letter issued on March 31. This letter served to update the status on all items contained in the Union's original submission. In addition, the letter attempted to incorporate changes resulting from the parties' March 28 discussions on certain issues. Regarding item #12, the Union modified its characterization of the practice to this statement:

**Payroll deductions will be available for all items currently permissible including COPE/PAC contributions, optional life insurance premiums, uniforms rental/cleaning, United Way contributions, court ordered child support payments, maintenance and garnishments payments, and 401(k) contributions and loan payments.**

This change allowed for the parties to reach agreement on the continuation of payroll deduction for all items other than US Savings Bonds. Regarding items #33 and #34, the Union's letter indicated that the dispute should be set aside for arbitration as provided under Article XI, Section 7.

On May 17, 2006, Hill Mayfield issued a letter which represented the last word from management on the unresolved issues, responding directly to the modifications denoted in the Union letter of March 31. Regarding item #12, the Company accepted the item #12 submission

by the Union. However, effective January 1, 2007, the Company discontinued the payroll withholding of United Way contributions.

During the 3rd step grievance meeting on the instant grievance, Human Resources Manager Hill Mayfield was asked by Union President Steve Vanderheyden, "Is there any dispute that the practice was in place one day before the sale?" Mayfield's reply was "Campbell made it clear during these negotiations that Titan did not support United Way". Mr. Campbell is President of Titan Tire and was a Company representative during local contract bargaining. This statement is clear confirmation that Titan corporate management was aware of the practice during contract negotiations. There has been no dispute that Titan management was aware of the practice both prior to the sale of the plant and following the Titan takeover. As a result, it would have been incumbent on the Company to have negotiated some provision to separate this issue from the resolution procedure established in Article XI, Section 7. The Company did not achieve or even propose any such exclusion. It is the Union's position that the standards contained in Article XI, Section must apply to the instant matter.

Regarding item #12, the Company provided written confirmation of its agreement to the continuation to honor payroll withholding for United Way contributions. This is clear acknowledgement that the instant issue of payroll withholding of United Way contributions has been "specifically adopted by the Company in writing." In fact, the parties have jointly stipulated today that the Company continued to withhold United Way contributions from employees' paychecks from January 1, 2006 until December 31, 2006. As a result, this practice must be considered to be incorporated into the 2006 Agreement and binding on the parties. The Company, without the approval of the Union, unilaterally discontinued this practice. It is the

Union's position that the Company refusal to continue the withholding beyond December 31, 2006 is a violation of the Collective Bargaining Agreement.

In regard to items #33 and #34, the Company did not accept these items under the terms of Article XI, Section 7. As such, the arbitrator is to determine whether or not the practice submitted to the Company under these provisions was in place prior to the sale. The Company's written response on March 28, 2006 confirms that it believed that a practice existed prior to the sale. In addition the parties have jointly stipulated that the practices contained in items #33 and #34 did indeed exist prior to the sale of the plant to Titan. Item #33 notes that employees were canvassed by plant personnel, contributions were withheld from paychecks, and the money was forwarded to the United Way offices. The joint stipulation confirms that the canvas was conducted annually by plant personnel in the plant at the Company's expense. Item #34 details that a parking place was provided inside the plant for selected United Way contributors. The joint stipulation confirms the existence of the parking spaces. In fact, the Company installed signs to identify and set aside the specific spaces to be used for that purpose. There is no dispute that Items #33 and #34 existed prior to the sale of the plant to Titan. As such, it is the Union's position that these practices are binding on the parties in accordance With Article IX, Section 7.

The fact is that the Company failed to negotiate the discontinuance of all United Way activities and is now attempting to gain through arbitration what it could not attain through contract bargaining. The Company was openly critical of the United Way organization during bargaining and detailed its reluctance to support the agency. However, the parties did not agree to sever ties with the United Way. The Union believes that the Company' distaste for the United Way has fueled the Company decision to cease United Way activities.

## REMEDY REQUEST

The Union requests that the grievance be granted in its entirety. Specifically, the Union requests that the Company be ordered to honor the controlling past practices detailed in Item #12, #33 and#34. The Union requests that the Company be ordered to reinstate withholding for United Way contributions at the rate designated by employees during the 2006 canvas. The Union requests the Company be ordered to conduct annual employee United Way canvasses for voluntary contributions. The Company should be ordered to provide payroll authorization forms and withhold voluntary contributions from employee paychecks. The Company should be ordered to forward those monies to the United Way of Northwest Illinois on a monthly basis. The Company should be ordered to restore the designated parking spaces inside the plant for selected United Way contributors.

BEFORE ARBITRATOR ALLEN COOK

| | | |
|---|---|---|
| TITAN TIRE CORPORATION OF FREEPORT, | ) ) ) | Case |
| Employer, | ) ) ) | **PREHEARING STATEMENT/** |
| and | ) ) | **BRIEF OF EMPLOYER** |
| UNITED STEELWORKERS, LOCAL 745L, | ) ) ) | |
| Union. | ) ) | |

Titan Tire of Freeport ("Titan") manufactures agricultural, construction and other off-road tires at the plant in Freeport, Illinois. Titan purchased the plant in January of 2006 from the Goodyear Tire & Rubber Company. Prior to purchasing the facility, Titan negotiated a five-year Collective Bargaining Agreement with United Steelworkers, Local 745L. Over the course of four months in 2005, the parties held almost weekly bargaining sessions to arrive at a new Collective Bargaining Agreement. The parties discussed a broad range of topics that are covered in the Collective Bargaining Agreement, the Benefits Agreement and a document entitled Letters Outside the Agreement.

One of the provisions in the CBA was Article XI, Section 7, "Effect of Agreement" which establishes the impact of past practices at the Freeport facility. (Jt. Ex. 1, Art. XI, Section 7). The parties agreed to a system whereby Titan would be bound to oral past practices that it "adopted". The procedure to adopt the past practice required that the Union submit the claimed past practice to the Company within 60 days of the effective date of the Agreement. The Company then had 30 days to respond to the practice. If the parties were unable to agree on the

PLAINTIFF'S
EXHIBIT

7

past practice, then the matter would be submitted to an arbitrator for decision. It is one of those issues that is before the arbitrator today.

The parties exchanged lists of past practices in accordance with Article XI, Section 7 and a number of items remained unresolved. One of those matters was item 33: "All employees, both hourly and salaried, are to be canvassed by plant personnel for contributions via payroll deductions to the area United Way organization with those monies forwarded to the United Way offices on a monthly basis." A related matter was item 34: "A parking space inside the plant near the employee entrance will be reserved for use by selected United Way contributors. The selection process will be mutually agreeable." Titan denied both of those items and did not permit a Untied Way campaign for the 2007 calendar year.

During the course of bargaining the Union brought up the United Way campaign that the Union and Goodyear conducted. Titan representatives made it clear that Titan was opposed to United Way campaigns and that it did not conduct them at any plant it owned. One of Titan's representatives at the table was Joyce Kain, the Human Resources manager at the Des Moines facility. Ms. Kain will testify at the arbitration that the Des Moines facility has been owned by Titan since 1994 and at no time in the 13 years that Titan has owned the facility has it permitted a United Way campaign. That was true even though there was a United Way campaign conducted by the prior owner, Pirelli Armstrong.

Titan did honor the payroll deductions for the 2006 calendar year because that was the campaign conducted during 2005 when Goodyear owned the plant. However, that should not be viewed as Titan's acquiescence to the past practice because the sole aspect that Titan followed was the payroll deduction. There was no campaign conducted during Titan's ownership and Titan made it clear that it did not support United Way campaigns during negotiations. In 2007

Titan made it clear to the Union that it would not permit a canvassing of employees for United Way because it did not support that canvas at any of its other plants. Titan has not accepted the past practice of canvassing and should not be required to accept the practice.

## ISSUE

Must the Company permit canvassing of employees for the United Way because of a past practice?

## RELEVANT CONTRACT PROVISIONS

### Article XI

**Section 7—Effect Of Agreement**

The parties have entered into this Collective Bargaining Agreement, a Benefits Agreement and a Supplemental Unemployment Benefits Plan ("Agreements"). Those Agreements shall constitute the sole and entire Agreement between the parties and supersedes all prior Agreements. The language of these Agreements will prevail over any oral agreements, unless specifically adopted by the Company in writing after the effective date of these Agreements.

For any past Freeport arbitration decisions, Goodyear arbitration decisions on relevant Benefits Agreement or Supplemental Unemployment Benefits Plan language or under the SUB agreement, precedent setting grievance settlements, memorandums of agreement, administrative letters or Standard Practice Letters ("Claimed Precedent") to be considered as applicable, they must be presented by either party before the Company issues a final response at Step 3 or they will not be relevant or admissible in any subsequent step, including, but not limited to arbitration. The parties agree that either party has up to ten (10) days after the close of the third step meeting to present to the other side any relevant "Claimed Precedent" for consideration. If any "Claimed Precedent" is presented, the other party will have until the case is certified for arbitration to provide any countervailing "Claimed Precedent" for consideration. Nothing herein will prevent the parties from arguing why the "Claimed Precedent" is not controlling before an arbitrator.

For any past arbitration decision at the facility, not disclosed as set forth above, the decision shall not be controlling, but may be introduced for argument in any subsequent arbitration. Nothing herein shall be deemed to limit submission of arbitration cases as argument in accordance with the arbitration protocol.

No oral modifications to the Agreements or oral representations with Goodyear regarding: (a) the Agreements, (b) grievance settlements or (c) past practices that occurred prior to the effective date of these Agreements will be binding on the Company, nor will they be admissible in arbitration proceedings, unless specifically adopted by the Company in writing after the effective

of employees for the United Way—something Titan has never permitted—does not affect the conditions of employment and cannot be deemed a past practice.

## ARGUMENT

### A.    There Is No Past Practice.

There can be no dispute that the canvassing of employees for United Way does not involve a "working condition" or a "major condition of employment." This involves a convenience that Goodyear provided to the Union in order to facilitate contributions to United Way. Absent being a condition of employment, it can not be deemed a past practice.

> In determining whether a practice may be treated as an implied term of the agreement, one arbitrator suggested that is binding if it concerns a 'working condition' but may be unilaterally discontinued if it invokes a 'gratuity.' Another arbitrator, however, doubted the validity of this test and suggested that perhaps the best test, though admittedly inexact, is the usage, to achieve contractual status, must concern a 'major condition of employment.'

HOW ARBITRATION WORKS, 611 Elkouri & Elkouri (6th Ed. 2003) citations omitted.

In this case, canvassing employees for the United Way, is a convenience to the Union and does not involve either a working condition or a major condition of employment. As a result, the Union cannot establish this as a past practice. Since it cannot be established as a past practice the Company must not be required to hold a canvassing of employees.

### B    Even There Is A Past Practice, The Company Can Terminate The Practice.

Even if the arbitrator were to determine that this was a past practice, the change in circumstances justifies its termination. In situations where a past practice exists, arbitrators have not prohibited companies in certain circumstances from terminating the practice. Arbitrators will

permit companies to terminate a past practice conditions have changed. *RMI Titanium Company*, 118 LA 947 (Smith 2003).

  Arbitrators have recognized that an otherwise binding practice may be modified or eliminated where the underlying basis for the practice has changed. This principle was articulated by one arbitrator as follows: "It must be stated as a general proposition that, absent language in a collective bargaining agreement expressly or impliedly to the contrary, once the condition s on which a past practice has been based are changed or eliminated, the practice may no longer be given effect."

HOW ARBITRATION WORKS, 618 Elkouri & Elkouri (6th Ed. 2003) (citations omitted).

  In this case, Titan has a policy prohibiting solicitation during company time for any purpose. Titan Tire of Des Moines does not permit a United Way campaign because of this policy and concern that canvassing of employees places undue pressure on people to contribute to the United Way. When Titan purchased the Des Moines facility in 1994, the prior owner Pirelli canvassed employees. Titan discontinued the practice. Titan did the same in Freeport when it bought the plant in 2006. Finally, when Titan bought the Bryan, Ohio facility in August of 2006, it also discontinued the United Way canvassing at that plant for 2007.

  The Union will contend that Titan "honored" the past practice when it agreed to continue payroll deductions for 2006. There is no question that Titan did permit payroll deductions for 2006, however, that is far short of Titan's agreement to honor the canvassing of employees at the facility. Indeed, Titan continued the payroll deductions for 2006 as a result of the 2005 campaign conducted by Goodyear. Titan, however, did not participate in the canvassing of employees and

indeed it told the Union during bargaining that it did not permit United Way campaigns on Company time.  As a result, there can be no claim that Titan honored the practice of the campaign simply because it permitted the payroll deductions to continue.  A close look at the practices before the arbitrator do NOT relate to the issue of the payroll deductions, the practices specifically relate to the canvassing of employees for the contributions.

## CONCLUSION

The Company is not obligated to continue to allow canvassing of employees for the United Way.  The Company respectfully requests that the grievance be denied.

Gene R. La Suer
Davis, Brown, Koehn, Shors & Roberts, P.C.
666 Walnut Street, Suite 2500
Des Moines, Iowa 50309-3993
Telephone:  (515) 288-2500
Facsimile:  (515) 243-0654
E-mail:  GeneLasuer@davisbrownlaw.com

ATTORNEY FOR EMPLOYER