IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| **TITAN TIRE CORPORATION OF FREEPORT,** | ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | |
| v. | ) ) | Case No. 3:08 C 50014 |
| **UNITED STEELWORKERS OF AMERICA, LOCAL 745L**, | ) ) ) ) | Magistrate P. Michael Mahoney |
| Defendant/Counter-Plaintiff. | ) | Presiding Judge |

**DEFENDANT/COUNTER-PLAINTIFF'S
RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

**I.   INTRODUCTION**

Under the controlling case law, this Court has no authority to review the fact-finding of the arbitrator. Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001); United Paperworkers International Union v. Misco, 464 U.S. 29, 36, 37-38 (1987); Jasper Cabinet Co. v. United Steelworkers of America, 77 F.3d 1025, 1028 (7th Cir. 1996). Thus, these statements of fact are taken from the pleadings and the arbitrator's award in this case.

**II.    STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.  The Employer in this case is Titan Tire Corporation. Titan Tire is an Illinois corporation with its principal place of business in Freeport, Illinois. Motion to Vacate and Answer, Para. 1.

2.  Titan Tire operates a manufacturing facility in Freeport, Illinois. At that facility it constructs agricultural and other off-road tires. Id.

3.  Titan Tire purchased the facility from Goodyear Tire and Rubber Company on January 1, 2006. Arb. Dec., p. 2.

4.  The Union in this case is Local 745L of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("USW"). Local 745L is located in Freeport, Illinois. The USW is an international labor organization that operates throughout the United States and Canada. Counterclaim and Answer, Para.1.

5.  The USW, Local 745L and Titan Tire are parties to a collective bargaining agreement which was effective on January 1, 2006, and expires in November 2010. Counterclaim and Answer, Para. 3; Motion to Vacate, Exh. A. This collective bargaining agreement is attached hereto as Exhibit 1.

6.  During the negotiations for the 2006-2010 collective bargaining agreement, the parties bargained extensively over the issue of which oral agreements and past practices at Goodyear would be honored at Titan. Their agreements on this issue were set forth in Section 7 of Article XI of the contract. The third paragraph of Section 7 states the following:

> No oral modifications to the Agreement or oral representations with
> Goodyear regarding: (a) the Agreements, (b) grievance settlements
> or (c) past practices that occurred prior to the effective date of these

>Agreements will be binding on the Company, nor will they be admissible in arbitration proceedings, unless specifically adopted by the Company in writing after the effective date of these Agreements. By "specifically adopted by the Company in writing" includes items in this Agreement as well as those adopted by the following procedure;
>
>>(1)   Within 60 days of the effective date, the Union must present a list of all oral modifications, grievance settlements or past practices to the Company for review.
>
>>(2)   Within 30 days of the date of presentation of the list, the Company will investigate all oral modifications, grievance settlements or past practices at the facility. The Company will then meet with the union and either accepts the oral modifications, grievance settlements or past practices or ask that the items disputed be specially set before an arbitrator for resolution. The standard for the arbitrator will be whether the oral agreement existed at least one day prior to the effective date of this Agreement.

Exhibit 1, p. 76-77.

7.   Prior to the purchase of the plant by Titan from Goodyear, Goodyear and the Union cooperated in jointly conducting yearly campaigns to collect money for the United Way Charity. This practice had existed since at least 1996. Arb. Dec., p. 2.

8.   This joint effort had the following components:

- joint canvassing by the Company and the Union to solicit contributions from employees for the campaign, Arb. Dec., p. 3;

- payroll withholding by employees, Arb. Dec., p. 3;

- a corporate donation by Goodyear, Arb. Dec., p. 3;

- prizes and incentives to the employees for donations, Arb. Dec., p. 3.

9. In the negotiations for the 2006 agreement, Titan informed the Union that it did not want to participate in the annual United Way Charity campaign. The Union did not agree to stop supporting the United Way Charity campaign. Arb. Dec., p. 6.

10. The parties also did not negotiate a provision allowing Titan to separate or remove this issue from the resolution procedure established in Article XI, Section 7. Arb. Dec., p. 6.

11. On February 28, 2006, the Union provided Titan with a list of oral agreements and past practices that had existed at the facility when it was sold by Goodyear to Titan. The Union gave notice that it wanted to continue the following three oral agreements:

- payroll deductions for United Way contributions;
- canvassing for contributions via payroll deduction;
- a prize for significant United way contributors.

Arb. Dec., p. 4.

12. The Company rejected the agreements for joint canvassing and for prizes. Arb. Dec., p. 4.

13. The Company did not object to the item regarding payroll deductions. Arb. Dec., p. 4.

14. The practices regarding joint canvassing and prizes existed one day prior to the effective date of the 2006-2010 collective bargaining agreement. Arb. Dec., p. 7.

15. Titan agreed to implement in 2006 the payroll withholding requests by employees for the 2006 campaign. It refused to implement the withholding when the Union sought to renew it in 2006 and refused to allow the joint canvassing for contributions. Arb. Dec., p. 3.

16. The Union grieved these decisions on October 23, 2006. Arb. Dec., p. 3. The parties were unable to resolve this dispute in the grievance procedure, and the parties arbitrated the case before Arbitrator Alan Cook on August 14, 2007. Arb. Dec., p. 1.

17. The collective bargaining agreement contains a broad definition of the disputes that may be eligible for resolution through the grievance procedure. Article IV, Section 1(a), defines a grievance as "any controversy between the Company and the Local Union, or between the Company and its employees or any of them." Exhibit 1, p. 9. Any grievance that is unresolved may be submitted to the arbitrator. Exhibit 1, p. 11.

18. Under the collective bargaining agreement, decisions of the arbitrator are final and binding. Exhibit 1, p. 12.

19. The "no strike" clause in the contract prohibits the Union from striking over an issue that is subject to the grievance procedure. Exhibit 1, p. 2.

Respectfully submitted,

CORNFIELD AND FELDMAN

By:  /s/ Stephen A. Yokich
     Stephen A. Yokich
     Attorney Bar Number 6181707

Attorneys for Defendant/Counter-Plaintiff United Steel Workers, Local 745L

Dated: April 28, 2008

CORNFIELD AND FELDMAN
Suite 1400
25 East Washington Street
Chicago, IL 60602-1803
(312) 236-7800
(312) 236-6686 (fax)

**CERTIFICATE OF SERVICE**

Stephen A. Yokich, an attorney, hereby certifies that on April 28, 2008, he caused the foregoing **Defendant/Counter-Plaintiff's Rule 56.1 Statement of Undisputed Material Facts** to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>Michael R. Lied, Esq.
>Tracy C. Litzinger, Esq.
>HOWARD & HOWARD
>One Technology Plaza, Suite 600
>211 Fulton Street
>Peoria, IL   61602-1350

and further certifies that on April 28, 2008, he caused the same document to be served upon the following nonregistered participants by U.S. Mail, first-class postage prepaid and addressed as shown below:

>Gene R. La Suer, Esq.
>DAVIS, BROWN, KOEHN, SHORS & ROBERTS, P.C.
>666 Walnut Street, Suite 2500
>Des Moines, Iowa   50309-3993

>/s/ Stephen A. Yokich
>Stephen A. Yokich