IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| **TITAN TIRE CORPORATION OF FREEPORT,** ) ) ) Plaintiff/Counter-Defendant, ) ) v. ) ) **UNITED STEELWORKERS OF AMERICA, LOCAL 745L**, ) ) ) Defendant/Counter-Plaintiff. ) | Case No. 3:08 C 50014 Magistrate P. Michael Mahoney Presiding Judge |

**USW LOCAL 745L'S MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

United Steelworkers of America, Local 745L ("Union"), provides this memorandum of law in opposition to Plaintiff's motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56.

**I.   INTRODUCTION**

Titan Tire Corporation of Freeport ("Employer") and the Union are parties to a collective bargaining agreement (CBA). The CBA explicitly provides an arbitration procedure for resolving disputes involving oral modifications to the CBA. Pursuant to the authority delegated to him in the CBA, Arbitrator Allen Cook issued an Award permitting union employees to continue to participate in a campaign through the United Way to raise money for charity. The Employer, however, has

refused to abide by the arbitrator's decision and seeks summary judgment to vacate the arbitration award.

The Employer disagrees with the arbitrator's decision and has essentially re-argued its case before this court, presumably in the hope that this court will reach a different result. However, this challenge runs contrary to the strong, well-established policy in the federal courts favoring the finality of arbitration awards. As long as the arbitrator was in fact interpreting the parties' CBA, as is manifestly the case here, the arbitration award must be upheld. Accordingly, the Employer's motion for summary judgment should be denied, and the Union's cross-motion for summary judgment seeking enforcement of the award should be upheld.

## II.  STANDARD OF REVIEW FOR LABOR ARBITRATION AWARDS

Both parties to this case agree that the scope of judicial review of labor arbitration awards is extremely narrow. *Ethyl Corp. v. United Steelworkers of America*, 768 F.2d 180, 183 (7th Cir. 1985). This is necessary to ensure that arbitration is an effective means to settle disputes and not a "three-tiered" process that is "more judicial than adjudication." *Id*. at 184. The federal policy, stated nearly fifty years ago, is no less true today: settling labor disputes by arbitration would be undermined if the courts had the final say on the merits of the award. *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596 (1960).

Accordingly, the question of interpretation of the collective bargaining agreement is a question for the arbitrator, and the courts have no business overruling him because their interpretation of the contract is different from his. *Chicago Newspaper Publishers' Ass'n v. Chicago Web Printing Pressmen's Union*, 821 F.2d 390, 396 (7th Cir. 1987) (citing *United Steelworkers of America v. Enterprise Wheel & Car Corp*., 363 U.S. 593, 599 (1960)). Even if a decision rests on

factual errors or "improvident, even silly, factfinding," this does not provide a basis for review of the merits of the decision. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (citing *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 36-39).

Further,

> [t]he labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. The parties expect that his judgment of a particular grievance will reflect not only what the contract says but, insofar as the collective bargaining agreement permits, such factors as the effect upon productivity of a particular result, its consequence to the morale of the shop, his judgment whether tensions will be heightened or diminished. For the parties' objective in using the arbitration process is primarily to further their common goal of uninterrupted production under the agreement, to make the agreement serve their specialized needs. The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance because he cannot be similarly informed.

*Id.* (citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581-82 (1960)).

Recognizing this policy, the Seventh Circuit has interpreted the test for upholding an arbitration award as "whether the arbitrator had exceeded the powers delegated to him by the parties." *Dexter Axle Co. v. Int'l Ass'n of Machinists & Aero. Workers*, 418 F.3d 762, 768 (7th Cir. 2005). The test for whether an award "draws its essence from the agreement" is thus not based on substantive reasonableness – and it may in fact be unsound – but it is whether the interpretation is based on the contract. *See Ethyl Corp.*, *supra*, 768 F.2d at 184. Indeed,

> so long as a plausible solution is available within the general framework of the agreement, the arbitrator has the authority to decide what the parties would have agreed on had they foreseen the particular item in dispute . . . . In such cases, judicial review is limited to whether the arbitrator's solution can be rationally derived

>from some plausible theory of the general framework or intent of the agreement.

*Id.* at 186 (citations omitted). Thus, it is the arbitrator who is "behind the driver's wheel of interpretation," and the court will vacate the award only if there is no possible interpretive route to the award. *Dexter Axle Co. v. Int'l Ass'n of Machinists & Aero. Workers*, 418 F.3d 762, 767-68 (7th Cir. 2005). That standard is not met here.

### III.   ARGUMENT

#### A.   The Arbitrator's Findings of Fact with Regard to Adopted Items 33 and 34 Draw Their Essence from the Collective Bargaining Agreement.

In an attempt to show that the Arbitrator did not employ "reasoned analysis," the Employer engages in an extensive review of the facts of this dispute and reiterates many of the same arguments that it presented to the arbitrator. (Plaintiff's Brief, Page 4.) The Employer's analysis indicates that it thinks "draws its essence" means "reasonable," a position that has been rejected in countless decisions of this court. *See Chi. Typographical Union v. Chi. Sun-Times,* 935 F.2d 1501, 1506 (7th Cir. 1991). The standard of review of arbitration decisions does not permit such a searching review of the facts and arbitrator's reasoning, so long as the arbitrator is not exceeding the authority delegated to him.

The arbitrator's decision was soundly within the scope of the authority delegated to him by the CBA. Article XI, Section 7, of the parties' CBA provides a procedure whereby oral modifications to the Agreement or oral representations with the prior employer may be incorporated into the present agreement. In order for these modifications regarding past practices, grievances, or interpretations of the CBA itself to be incorporated into the agreement, they must be "specifically adopted by the Company in writing." The CBA defines "specifically adopted by the company in

writing" to include a list of modifications presented by the union to the employer for review. The employer then may either accept the modifications or submit them to arbitration. If the employer submits the list to arbitration, the CBA confers on the Arbitrator explicit authority to review the oral modifications under the standard of "whether the oral agreement existed at least one day prior to the effective date of [the CBA] between the Employer and the Union." (Art. XI, Sec. 7.)

The arbitrator concluded that Items 33 and 34, relating to the parties' practices under the United Way charity campaign, existed one day prior to the effective date of the CBA. The Employer does not appear to dispute that Item 12 was in existence at the relevant date, and the arbitrator so found. These findings are well within the arbitrator's delegated authority to determine whether an "oral agreement existed at least one day prior to the effective date of the [CBA]." Thus, no further review is permitted, and even "serious error" on the arbitrator's part would not justify overturning his decision. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 510 (2001). It must be noted, however, that the arbitrator's findings are not even arguably in "serious error." The arbitrator could have logically and reasonably interpreted the reference to the oral agreement in existence one day prior to the effective date of the CBA as referring to an oral agreement between the Union and Goodyear. That would be consistent with the language of the Article and multiple references to Goodyear throughout.

**B.    The Arbitrator Did Not Exceed His Authority by Modifying the Terms of the Agreement.**

The Employer's assertion that the arbitrator exceeded his authority by modifying the agreement rests on erroneous references to Seventh Circuit case law, and it borders on bad faith. When an arbitration clause is worded so as to encompass disputes over the scope of the contract in which it is embedded, issues of the contract's scope are for the arbitrator. *Air Line Pilots Ass'n, Int'l*

*v. Midwest Express Airlines, Inc.*, 279 F.3d 553, 556 (7th Cir. 2002). While the Arbitrator may not then modify an agreement unless authorized to do so by explicit contractual terms, he is not confined to only the most strictly literalist view of the provisions of the agreement, and he may infer conditions from the written provisions. *See Ethyl Corp.*, *supra*, 768 F. 2d at 186.

The parties to the contract negotiated a detailed contract provision that covers the issue of which oral agreements, modifications, or past practices between the Union and Goodyear would be enforceable under the contract between the Union and Titan Tire. The Employer cannot dispute that the arbitrator had authority to interpret these contractual provisions and to apply them to the alleged oral agreements and past practices that were the subject of this grievance. The existence of this detailed contractual provision explicitly contemplates that some oral agreements and past practices between the Union and Goodyear will be enforceable against Titan Tire. Thus the arbitrator did not exceed his authority by enforcing such oral agreements and practices. This case is therefore clearly different than those in which a contract limits the authority of an arbitrator to grant a grievance on such grounds. This makes *Judsen Rubber* – essentially the only case cited by the Employer in support of its argument – completely inapposite to this case.

**C.     The Arbitrator Did Not Disregard the Employer's "Management Rights."**

The Employer's final argument regarding management rights is also flawed. As the Supreme Court stated in 1960,

> it is not unqualifiedly true that a collective-bargaining agreement is simply a document by which the union and employees have imposed upon management limited, express restrictions of its otherwise absolute right to manage that enterprise, so that an employee's claim must fail unless he can point to a specific contract provision upon which the claim is founded.

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 579 (1960). Instead, management functions must be interpreted as referring only to that over which the contract gives management complete control and unfettered discretion. *Id*. at 584.

Here, management was not given "complete control and unfettered discretion" over prior oral agreements. The language of the contract explicitly invites an arbitrator to examine oral agreements that existed "one day prior to the effective date of the Agreement." Therefore, there is no basis for elevating management's conflicting no-solicitation policy above the arbitrator's interpretation.

The Employer's final argument involving a distinction between a "gratuity" and a *bona fide* past practice does not appear to be derived from the contract or case law and was soundly rejected by the arbitrator. ("There is no indication that the provision only applies to 'major' conditions of employment or recognized past practices," Arb. Award, Page 8.)

## IV.   CONCLUSION

The arbitrator in this case has exercised the precise powers delegated to him by the parties' CBA. The explicit terms tasked him with determining whether a list of oral modifications or past practices should be incorporated into the agreement, relying on a standard of whether the oral agreement existed at least one day prior to the effective date of the agreement. The arbitrator precisely followed this delegation and concluded that the union's list of three oral modifications should be incorporated into the agreement because they were in existence one day prior to the effective date of the agreement. No more searching inquiry is required or permitted. The

Employer's motion for summary judgment to vacate the arbitration award should be denied, and the Union's cross-motion for enforcement should be granted.

        Respectfully submitted,

        CORNFIELD AND FELDMAN

        By:   /s/ Stephen A. Yokich
              Stephen A. Yokich
              Attorney Bar Number 6181707

        Attorneys for Defendant/Counter-Plaintiff United Steel Workers, Local 745L

Dated: May 20, 2008

CORNFIELD AND FELDMAN
Suite 1400
25 East Washington Street
Chicago, IL 60602-1803
(312) 236-7800
(312) 236-6686 (fax)

**CERTIFICATE OF SERVICE**

Stephen A. Yokich, an attorney, hereby certifies that on May 20, 2008, he caused the foregoing **USW Local 745L's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment** to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Michael R. Lied, Esq.
> Tracy C. Litzinger, Esq.
> HOWARD & HOWARD
> One Technology Plaza, Suite 600
> 211 Fulton Street
> Peoria, IL   61602-1350

and further certifies that on May 20, 2008, he caused the same document to be served upon the following nonregistered participants by U.S. Mail, first-class postage prepaid and addressed as shown below:

> None.

/s/ Stephen A. Yokich
Stephen A. Yokich