# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 50014 | **DATE** | 8/22/2008 |
| **CASE TITLE** | Titan Tire Corporation of Freeport vs. United Steel Workers of America, Local 745L | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, Titan's motion for summary judgment is denied. The Union's motion for summary judgment on its counterclaim to enforce the award is granted. Judgment is entered in favor of the Union enforcing the arbitrator's award of October 22, 2007.

■ [ For further details see text below.]

Electronic Notices.

## STATEMENT

   Plaintiff, Titan Tire Corporation of Freeport ("Titan"), moves to vacate an arbitration award entered in favor of United Steelworkers of America Local 745L ("Union"). Titan claims the arbitration award exceeded the arbitrator's authority under the collective bargaining agreement ("CBA") because it changed, amended, or added to the provisions of the CBA despite the CBA's express prohibition against doing so. The Union counterclaims for a declaration that the award is valid, a direction to Titan to follow the award, and for reasonable attorney fees and costs of bringing this action to enforce the award. Jurisdiction is proper under 29 U.S.C. § 185. Titan moves for summary judgment vacating the award. The Union moves for summary judgment to enforce the award.

   Titan has a manufacturing plant in Freeport, Illinois. Titan purchased this plant from Goodyear Tire & Rubber Company ("Goodyear") in January, 2006. The CBA between Titan and the Union took effect January 1, 2006. Titan says it has maintained a policy since 1996 that prohibits employees from soliciting or advocating support of any cause or organization during working time. When Goodyear owned the plant, it allowed plant personnel to canvass employees for contributions via payroll deduction for United Way and reserved a parking space near the employee entrance for use by selected United Way contributors.

   Article XI, Section 7 of the CBA between Titan and the Union provided that the CBA, a Benefits Agreement and a Supplemental Unemployment Benefits Plan (referred to in Section 7 as "Agreements") superseded all prior agreements and that "[n]o oral modifications to the Agreements or oral representations with Goodyear regarding: (a) the Agreements, (b) grievance settlements or (c) past practices that occurred prior to the effective date will be binding on [Titan] nor will they be admissible in arbitration proceedings unless specifically adopted by [Titan] in writing after the effective date of these Agreements." Section 7 provided that "'specifically adopted by [Titan] in writing' includes items in this Agreement as well as those adopted by the following procedure: . . . the Union must present a list of all oral modifications, grievance settlements or past practices to [Titan] for review." Titan then would either accept "the oral modifications, grievance settlements or past practices or ask that the items disputed be specially set before an arbitrator for

**STATEMENT**

resolution." The standard for the arbitrator was whether "the oral agreement existed at least one day prior to the effective date of the [CBA]."

The Union submitted a list of claimed oral agreements which included, among others, certain items related to the United Way campaigns. Titan rejected United Way canvassing and the provision of a parking space after the effective date of the CBA but allowed payroll deductions for United way contributions for 2006 to accommodate commitments made during the Goodyear/Union 2005 United Way campaign. The Union filed a grievance on October 23, 2006 after Titan refused to participate in the 2006 United Way campaign. The arbitrator entered an award in favor of the Union on October 22, 2007. The arbitrator concluded that the record showed these oral agreements/past practices met the requirement of being in existence at least one day prior to the effective date of the CBA and directed Titan to continue payroll deduction for United Way contributions from Union members, to allow for the special use of parking spaces for certain contributors, and to allow the 2007 fall United Way campaign to occur.

Titan argues the award must be vacated because the arbitrator erroneously concluded these practices existed prior to the effective date of the CBA, the arbitrator exceeded his authority and modified the terms of the CBA, and Goodyear's prior practice of allowing canvassing and providing parking spaces for the United Way campaign do not constitute bona fide prior practices. The Union counters that the arbitrator's decision was clearly based on his interpretation of the CBA and the court cannot overrule it.

"Judicial review of a labor-arbitration decision pursuant to [a collective bargaining agreement] is very limited. Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001). "[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599 (1960). Not even "serious error" by the arbitrator justifies overturning his decision where he is "construing a contract and acting within the scope of his authority." Garvey, 532 U.S. at 510. The question is not whether the arbitrator erred, clearly erred, or grossly erred in interpreting the contract but whether he interpreted the contract. Hill v. Norfolk & Western Ry. Co., 814 F.2d 1192, 1195 (7th Cir. 1987). If he interpreted the contract, then his interpretation is conclusive. Id.

It is evident the arbitrator here interpreted the contract. At issue was the meaning of the CBA language "whether the oral agreement existed at least one day prior to the effective date of [the CBA]." The arbitrator's decision observes that Titan was aware of the oral agreement/past practice, that the Union preserved this issue in its list of oral agreements/past practices that it wanted resolved through the Article XI, Section 7 process. Titan pursuant to the Section 7 procedures did not accept the oral agreement/past practice and submitted it to arbitration. The arbitrator found the practice existed during Goodyear's ownership and therefore existed at least one day prior to the effective date of the CBA. This interpretation of the CBA brought the arbitrator to the conclusion that the United Way canvassing, payroll deduction, and reserved parking space were adopted pursuant to the Article XI, Section 7 provisions of the CBA and, therefore, binding on Titan.

Titan argues it made clear it would not accept the United Way oral agreements during collective bargaining sessions and that it rejected these oral agreements when tendered by the Union pursuant to Article XI, Section 7. Titan maintains there is no evidence that these agreements existed as to Titan at least one day prior to January 1, 2006. However, it is apparent the arbitrator interpreted the Section 7 language to mean that the practice existed as to Goodyear at least one day prior to the CBA's effective date. This interpretation is conclusive. Id.

Titan maintains the arbitrator exceeded his authority and modified terms of the collective bargaining agreement and also that Goodyear's past practices concerning the United Way campaign were not bona fide

## STATEMENT

past practices that could be recognized to have the force of explicit contract terms. It contends the arbitrator improperly relied on "past practices" citing Judsen Rubber Works, Inc. v. Mfg. & Prod. Serv. Workers Union Local No. 24, 889 F.Supp. 1057 (N.D. Ill. 1995) (Castillo, J.) In Judsen, a practice of paying overtime for wash-up time existed for at least 24 years prior to the execution of the collective bargaining agreement. The agreement did not make any reference to this practice. The arbitrator ruled Judsen violated the agreement when it discontinued this practice because it was a bona fide past practice and, therefore, carried the force of an explicit contract provision. Id. at 1059. The Judsen court found the arbitrator acted outside the scope of his authority and did not base his award on the essence of the collective bargaining agreement. Id. at 1064. The court noted the arbitrator made remarks that directly showed he was not looking to past practices to interpret the contract but rather in spite of the contract terms. Id. at 1065. For example, the Judsen arbitrator said: "the focus of this dispute is not whether some other clause of the contract is ambiguous- in this case Article VIII. The question . . . is whether the long-standing practice . . . is a part of the Agreement irrespective of other provisions of the Agreement. Id.

As discussed above, the arbitrator in the case before this court was interpreting Article XI, Section 7. He did not conclude that the United Way practices were a part of the CBA in spite of their exclusion from it because they were bona fide past practices that rose to the level of explicit contract terms. He simply concluded, applying the standard established by the explicit language of Article XI, Section 7, that these practices became part of the CBA. He interpreted the contract. He did not modify it or add provisions irrespective of the provisions of the CBA. Whether his interpretation of the CBA was erroneous is not for this court to decide. The decision is binding whether this court would agree with in or not. See Hill, 814 F.2d at 1195.

For the foregoing reasons, Titan's motion for summary judgment is denied. The Union's motion for summary judgment on its counterclaim to enforce the award is granted. Judgment is entered in favor of the Union enforcing the arbitrator's award of October 22, 2007.